UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ROY R. DIXON                                                    CIVIL ACTION

VERSUS                                                          NO. 23-374

TIM HOOPER, WARDEN                                              SECTION "M"(2)

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing § 2254 Cases. Upon review of the entire record,[1] I have determined that a federal evidentiary hearing is unnecessary.[2] For the following reasons, I recommend that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL BACKGROUND

Petitioner Roy R. Dixon is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[3] On March 26, 2013, Dixon was charged by a bill of information in Jefferson Parish with production of pornography involving juveniles under seventeen and two counts of sexual battery of a child under the age of thirteen.[4] Dixon pled not

---

[1] The State Court Record was electronically filed by the State at ECF No. 10-1.

[2] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id.* § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. *Id.* § 2254(e)(2)(B).

[3] ECF No. 3, at 1.

[4] ECF No. 10-1, at 9, Bill of Information, 3/26/13. The State amended the bill of information to reflect the correct date of the offenses on May 16, 2016. *Id.* at 8, Amended Bill of Information, 5/16/16. The bill of information was further amended on May 15, 2017, correcting the offense charged in count one to production of pornography involving a juvenile under the age of thirteen. *Id.* at 7, Second Amended Bill

guilty on April 15, 2013.[5]  The Louisiana Fifth Circuit Court of Appeal summarized the established facts as follows[6]:

> Defendant was often the caretaker of his two-year old sister, L.D., when his mother, C.D., worked.  On January 26, 2013, while watching L.D., defendant invited Rayan Badeaux, a man he met on the Internet, to his house located at 1402 Hancock Street in Gretna, where defendant engaged in sexual intercourse with Mr. Badeaux.  Afterwards, defendant left the room to check on L.D.  While defendant was out of the room, Mr. Badeaux looked through defendant's cell phone and located a video of a young toddler and an adult male who was touching the toddler's vagina.  Mr. Badeaux immediately left defendant's house with defendant's cell phone and went to the New Orleans Police Department's (NOPD) Fourth District Station in New Orleans.  Because the aforesaid residence is located in the City of Gretna, the Gretna Police Department was contacted regarding the pornographic video on the cell phone.

> Detective Jeffrey Laborie with the Gretna Police Department met Mr. Badeaux at NOPD and obtained the cell phone from him.  Mr. Badeaux showed Detective Laborie one video of a small female toddler, approximately one or two years old, with a pacifier in her mouth.  The video showed a female toddler who was unclothed, and an adult man's hand touching her vagina.  Detective Laborie testified that he believed, based on experience, that there was additional contraband on the cell phone.

> During his investigation, Detective Laborie developed a potential suspect, "Allen," and went to 1402 Hancock Street where he spoke with C.D. about the cell phone and the number associated with it.  C.D. told him that the cell phone belonged to her son, Roy, not "Allen."  C.D. stated that she confronted defendant about videos on his phone, and told defendant that he was no longer welcome at her house.  At that point, defendant became the potential suspect.  While speaking with C.D., defendant approached the residence on his bicycle.  Detective Laborie noticed that defendant was wearing the same clothing and matched the description he was previously given.  Based on his corroborated observation, Detective Laborie approached defendant.  Defendant appeared upset and was crying.  Defendant spontaneously stated that he wanted to tell his side of the story.  Detective Laborie transported defendant to the police station and placed him in a holding cell.  While defendant was in the holding cell, Detective Laborie wrote his report in a nearby room equipped with a monitor which allowed him to view and hear defendant.  Detective Laborie overheard defendant crying and saying to himself, "I'm so stupid.  I can't believe I did that.  I'm so lazy.  I should have deleted those files.  I lost my family.  I will never be able to make up for this."  Detective Laborie

---

of Information, 5/15/17.

[5] *Id.* at 17, Min. Entry, 4/15/13.

[6] Pursuant to LA. REV. STAT.§ 46:1844(W)(1)(a), this Court refers to the Dixon's sister and mother by their initials because of the sex crimes charged in the indictment.

transcribed this statement "word for word" into his report as defendant was talking. At that point, Detective Laborie turned over his investigation to Sgt. Lewis Alvarez, who was a detective at the time.

Before interviewing defendant, Sgt. Alvarez obtained a search warrant for defendant's cell phone, on which three videos were found. Sgt. Alvarez stated that it was too dark to see anything on the first video. The second video depicted a black adult male's penis ejaculating on a toddler's vagina. The third video showed a black adult male's hand "playing with [toddler's] vagina." Sgt. Alvarez testified that he believed that there was more contraband on the phone, and he brought defendant from the holding cell to interview him. After being advised of his Miranda rights, defendant agreed to voluntarily give a recorded statement. In his statement, defendant admitted to "sexting" "Brad Howard," who asked him about his family. Defendant told Brad about his sister, L.D., and her age. Brad wanted defendant to touch L.D.'s vagina and ejaculate on her on video, and to send the videos to him. Although defendant initially refused, defendant stated that he did take the videos of L.D. as Brad requested. Defendant stated that he "knew it was wrong" but he wanted to keep communicating with Brad, and believed that if he did as requested, Brad would continue sending him photographs and videos of himself. Defendant stated that one video depicted him rubbing the outside of L.D.'s vagina with his finger. In a third video, he was rubbing L.D.'s vagina, but the lighting was too dark. He stated that he did not "insert" his finger into her vagina. Defendant also stated he took a video of himself ejaculating on L.D. Both videos were done in his mom's house located 1402 Hancock Street while he was changing L.D.'s diaper, and were sent to Brad. After further questioning, defendant also admitted to taking and sending approximately ten pornographic photographs of L.D.'s vagina to Brad, including one in which defendant inserted a Q-tip into L.D.'s vagina.

When defendant was asked if he inserted his penis into L.D., defendant stated emphatically that he "never" put his penis in her vagina or anus, and "never" licked either. Defendant stated that he knew what he did was not right because L.D. could not protect herself, but stated that he did not hurt her. Defendant stated that he was "in jail because of the stuff that was on my memory card that I thought I deleted."

After his statement, defendant was placed under arrest. Sgt. Alvarez went to 1402 Hancock Street to locate L.D. and meet with C.D. He observed a toddler that was one or two years old, and learned that L.D. was born February 20, 2011, which corroborated what he was told by defendant.[7]

---

[7] *State v. Dixon*, 254 So. 3d 828, 833-34 (La. App. 5th Cir. 8/29/18) (footnotes omitted); ECF No. 10-1, at 309-11, 5th Cir. Opinion, 18-KA-79, 8/29/18.

Dixon proceeded to trial before a jury on May 15 through 16, 2017, and was found guilty as charged by a unanimous jury.[8]  On August 24, 2017, the trial court sentenced Dixon to twenty years as to count one and ninety-nine years as to counts two and three, each sentence to be served at hard labor and without the benefit of parole, probation, or suspension of sentence, and to be served concurrently.[9]  The trial court denied Dixon's motion for reconsideration of sentence.[10]

On direct appeal, Dixon's appointed counsel asserted three assignments of error: (1) ineffective assistance of counsel at his competency hearing; (2) the trial court erred in imposing excessive sentences on all three convictions; and (3) the trial court erred in denying his motion to reconsider sentence.[11]

On August 29, 2018, the Louisiana Fifth Circuit affirmed Dixon's convictions, but vacated his sentences and remanded the matter for resentencing.[12]  The court found that Dixon failed to show that his counsel was ineffective in participating in the competency hearing via telephone.[13] The court found that the trial court abused its discretion in sentencing Dixon to ninety-nine years for sexual battery of a juvenile under the age of thirteen and that the sentences as to counts two and three were constitutionally excessive.[14]  The court further found Dixon's 20-year sentence as to count one for production of pornography involving a juvenile under the age of thirteen to be illegally lenient.[15]

---

[8] ECF No. 10-1, at 130-32, Trial Mins., 5/15/17; *id.* at 171-72, 5/16/17, Trial Mins., 5/16/17; *id.* at 165-70, Verdicts, 5/16/17; *id.* at 1710-29, Trial Tr., 5/15/17; *id.* at 1730-1913, Trial Tr., 5/16/17.

[9] *Id.* at 189-90, Sentencing Mins., 8/24/17; *id.* at 191, Uniform Commitment Order, 8/30/17; *id.* at 1914-23, Sentencing Tr., 8/24/17.

[10] *Id.* at 288, Hearing Mins., 10/5/17; *id.* at 183, Motion for Reconsideration of Sentence, 8/24/17; *id.* at 1924-29, Hearing Tr., 10/5/17.

[11] *Id.* at 1932-49, Appellate Brief, 18/KA/0079, 3/24/18.

[12] *State v. Dixon*, 254 So. 3d 828 (La. App. 5th Cir. 8/29/18); ECF No. 10-1, at 1989-2007, 5th Cir. Opinion, 18-KA-386, 5/8/19.

[13] *Id.* at 835-36; ECF No. 10-1, at 1995-97, 5th Cir. Opinion, 18-KA-79, 5/8/19.

[14] *Id.* at 837-41; ECF No. 10-1, at 1998-2004, 5th Cir. Opinion, 18-KA-79, 5/8/19.

[15] *Id.* at 841; ECF No. 10-1, at 2004-05, 5th Cir. Opinion, 18-KA-79, 5/8/19.

On February 18, 2019, the Louisiana Supreme Court refused to consider Dixon's untimely related writ application under LA. S. CT. R. X § 5.[16]  On April 8, 2019, the Louisiana Supreme Court granted Dixon's request for reconsideration and denied his related writ application.[17]

On October 19, 2018, the trial court resentenced Dixon to eighty years at hard labor as to each count to be served concurrently and without the benefit of parole, probation, or suspension of sentence.[18]  Dixon's motion for reconsideration of sentence was denied on November 29, 2018.[19]

On his second direct appeal, Dixon claimed that his sentences were unconstitutionally excessive.[20]  On December 30, 2019, the Louisiana Fifth Circuit Court of Appeal found that the sentences were not unconstitutionally excessive and did not constitute a manifest abuse of the trial court's discretion.[21]  On July 17, 2020, the Louisiana Supreme Court denied Dixon's related writ application without reasons.[22]

On September 20, 2021, Dixon filed a pro se application for post-conviction relief asserting the following claims:[23]

(1) ineffective assistance of counsel in failing to properly raise illegal search and seizure;

[16] *State v. Dixon,* 263 So. 3d 1154 (La. 2/18/19); ECF No. 10-1, at 2435, La. Sup. Ct. Order, 2018-KH-1909, 2/18/19; *id.* at 2437-2522, La. S. Ct. Writ Application, 18 KH 1909, 11/8/18 (signed 9/20/18).

[17] *State v. Dixon,* 267 So. 3d 606 (La. 4/8/19); ECF No. 10-1, at 2436, La. Sup. Ct. Order, 2018-KH-1909, 4/8/19; *id.* at 2523-25, Motion for Reconsideration, 3/4/19 (signed 3/1/19).

[18] ECF No. 10-1, at 334, Resentencing Min., 10/19/18; *id.* at 335, Uniform Commitment Order, 10/19/18; *id.* at 373, Corrected Uniform Commitment Order, 12/4/18; *id.* at 2065-82, Resentencing Tr., 10/18/18.

[19] *Id.* at 343, Motion for Reconsideration of Sentence, 10/23/18; *id.* at 369, Min. Entry, 11/29/18; *id.* at 371-72, Corrected Min. Entry, 12/4/18; *id.* at 2083-86, Hearing Tr., 11/29/18.

[20] *Id.* at 2091-2104, Appeal Brief, 19-KA-0007, 2/7/19.

[21] *State v. Dixon,* 289 So. 3d 170, 176 (La. App. 5th Cir. 12/30/19); ECF No. 10-1, at 2140, 5th Cir. Opinion, 19-KA-7, 12/30/19.

[22] *State v. Dixon,* 298 So. 3d 176 (La. 7/17/20); ECF No. 10-1, at 2622, La. S. Ct. Order, 2020-KO-00143, 7/17/20; *id.* at 2623-92, La. S. Ct. Writ Application, 20 KO 143, 1/16/20 (signed 1/14/20).

[23] ECF No. 10-1, at 398-402, Application for Post-Conviction Relief, 9/24/21 (signed 9/20/21); *id.* at 403-575, Memorandum in Support of Application for Post Conviction Relief with Request for Appointment of Counsel and an Evidentiary Hearing, 9/24/21 (signed 9/20/21).

(2) ineffective assistance of counsel in failing to raise an issue regarding the chain of custody of the cell phone;

(3) ineffective assistance of counsel in failing to (a) raise prosecutorial misconduct based upon fabricated evidence, and (b) call an expert;

(4) ineffective assistance of counsel in allowing hearsay testimony from police witnesses in violation of *Crawford v. Washington,* 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004);

(5) ineffective assistance of counsel in failing to move to suppress the confession and raise a reasonable hypothesis of innocence;

(6) the denial of the voir dire transcript denied him a complete record on direct appeal, and his counsel was ineffective in failing to move to strike a juror who knew the trial judge.

On April 25, 2022, the trial court denied Dixon's application for post-conviction relief.[24] The trial court found that a private citizen found the cellphone and showed it to the police, and that, thereafter, a warrant was secured.[25] The trial court found that the chain of custody claim was speculative and conclusory.[26] The trial court found that Dixon failed to make a showing that any evidence or testimony was falsified and provided no facts to rebut the highly technical evidence presented by the State.[27] The trial court determined that the State avoided presenting hearsay evidence and that, given the overwhelming weight of the evidence, Dixon was not prejudiced.[28] The court held that defense counsel did in fact litigate the motion to suppress Dixon's statement, albeit he was unsuccessful.[29] Finally, the trial court found Dixon's claim relating to the completeness of the appellate record was meritless.[30]

---

[24] *Id.* at 851-53, Order, 4/25/22.

[25] *Id.* at 852.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* at 852-53.

[30] *Id.* at 853.

On May 17, 2022, Dixon filed a writ application to the Louisiana Fifth Circuit Court of Appeal.[31]  On June 20, 2022, the Louisiana Fifth Circuit denied Dixon's writ application.[32]  The court found that the search of Dixon's phone by a private citizen was not subject to the limitations of the Fourth Amendment and that Dixon failed to show his counsel was ineffective in failing to argue a motion to suppress on the basis claimed by Dixon.[33]  The court found that defense counsel was not ineffective in failing to raise an issue with regard to chain of custody.[34]  With regard to the failure to hire an expert, the court found that it was a matter of trial strategy.[35]  The court found that a hearsay objection to Detective Laborie's testimony regarding what Badeaux showed him was not warranted.[36]  The court found that defense counsel in fact challenged the voluntariness of Dixon's confession.[37]  Finally, the court held that Dixon failed to show that he was prejudiced by the voir dire transcript's absence from the appellate record and further failed to show a particularized need for a free copy of the transcript.[38]

On January 11, 2023, the Louisiana Supreme Court denied Dixon's related writ application.[39]  The Court found that Dixon failed to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington,* 466 U.S. 668 (1984).[40]

---

[31] *Id.* at 2151-2434, 5th Cir. Writ Application, 22-KH-227, 5/17/22 (signed 5/16/22).
[32] *Id.* at 866-72, La. 5th Cir. Order, 22-KH-227, 6/20/22 .
[33] *Id.* at 869.
[34] *Id.* at 869-70.
[35] *Id.* at 870.
[36] *Id.*
[37] *Id.* at 871.
[38] *Id.* at 871-72.
[39] *Dixon*, 352 So. 3d at 555; ECF No. 10-1, at 2693, La. Sup. Ct. Order, 2022-KH-01174, 1/11/23.
[40] *Id.*; ECF No. 10-1, at 2693, La. S. Ct. Order, 2022-KH-0174, 1/11/23; *id.* at 2694-3019, La. S. Ct Writ Application, 2022-KH-0174, 7/11/22.

## II.    FEDERAL HABEAS PETITION

On January 15, 2023, Dixon filed a petition for federal habeas corpus relief styled under 28 U.S.C. § 2254 and challenged his current custody.[41]  Dixon asserts the following claims before the court:

> (1) ineffective assistance of counsel in failing to properly raise illegal search and seizure;

> (2) ineffective assistance of counsel in failing to raise an issue regarding chain of custody for the cell phone;

> (3) ineffective assistance of counsel in failing to (a) raise prosecutorial misconduct based on fabricated evidence, and (b) call an expert;

> (4) ineffective assistance of counsel in allowing hearsay police testimony in violation of *Crawford*;

> (5) ineffective assistance of counsel in failing to move to suppress the confession and raise a reasonable hypothesis of innocence; and

> (6) the absence of the voir dire transcript denied him the right to a complete record on direct appeal, and his counsel was ineffective in failing to challenge a juror who knew the trial judge.[42]

The State filed a response in opposition to Dixon's petition and concedes that his petition is timely and that the enumerated claims are exhausted.[43]  The State asserts that the claims are meritless.[44]  Dixon filed a reply to the State's response reiterating his claims.[45]

## III.    LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28

---

[41] ECF No. 3.
[42] *Id.* at 6-13; ECF No. 3-1, at 15.
[43] ECF No. 9, at 5.
[44] *Id.* at 13-36.
[45] ECF No. 11.

U.S.C. § 2254. The AEDPA went into effect on April 24, 1996,[46] and applies to habeas petitions filed after that date.[47] The AEDPA therefore applies to Dixon's petition filed on January 25, 2023.[48]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court. In other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural default" on a claim.[49] Here, the State does not seek to time bar Dixon's federal habeas petition, nor does it claim that state court review has not been exhausted or that any enumerated claim is in procedural default.[50] This federal habeas court is thus not barred from reviewing Dixon's claims.

Nevertheless, for the reasons that follow, Dixon is not entitled to federal habeas relief.

## A. **Standards of a Merits Review**

Sections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law in federal habeas corpus proceedings.[51] Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[52] The statute also

---

[46] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[47] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[48] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Dixon dated his signature January 25, 2023. ECF No. 3, at 17.

[49] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

[50] ECF No. 9, at 5.

[51] *Nobles*, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

[52] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).

codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1).  The determination receives deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"[53]  The United States Supreme Court has clarified the § 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[54]

The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."[55]  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"[56]

---

[53] *Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000) (brackets in original) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000)), *aff'd in part, rev'd in part on other grounds*, 532 U.S. 782 (2001); *Hill*, 210 F.3d at 485.

[54] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Penry*, 532 U.S. at 792-93 (2001) (citing *Williams*, 529 U.S. at 405-06, 407-08); *Hill*, 210 F.3d at 485.

[55] *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington*, 562 U.S. at 103).

[56] *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)); *Shoop*, 139 S. Ct. at 509 (habeas courts must rely "strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.").

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"[57]  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[58]  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[59]

**B.  AEDPA Standards of Review Apply in this Case**

As discussed above, the AEDPA's deferential standards of review under § 2254(d) and *Williams*[60] apply only to claims adjudicated on the merits by the state courts.  28 U.S.C. § 2254(d). Thus, the deferential AEDPA standards of review do not apply to claims that are not adjudicated on the merits in state court.[61]  In that instance, the federal habeas court will consider the claims (not addressed on the merits) under pre-AEDPA de novo standards of review.[62]

To determine whether to apply the highly deferential AEDPA standards, a federal habeas court must look to the last reasoned state court decision to determine whether that ruling was on the merits of the claim and "lack[ed] in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[63]  In well-settled Supreme Court doctrine, when faced with an unexplained state court decision, the federal

---

[57] *Price v. Vincent*, 538 U.S. 634, 641 (2003) (brackets in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (citations omitted)).

[58] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

[59] *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

[60] 529 U.S. at 362.

[61] *Cullen v. Pinholster*, 563 U.S. 170, 185-86, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).

[62] *Henderson*, 333 F.3d at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims asserted in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

[63] *White*, 572 U.S. at 419-20 (quoting *Harrington*, 562 U.S. at 103).

habeas court "should 'look through' the unexplained decision to the last related state-court decision" providing particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision.[64]

## IV.  DIXON'S SPECIFIC CLAIMS

### A.  Claims One through Five & Six (in part): Ineffective Assistance of Trial Counsel

Dixon alleges multiple instances of ineffective assistance of trial counsel.  Specifically, he asserts his trial counsel was ineffective in failing to raise illegal search and seizure.  He further alleges that his counsel was ineffective in failing to argue that there was a break in the chain of custody relating to the cellphone.  He also claims his trial counsel was ineffective for failing to raise prosecutorial misconduct based upon fabricated evidence.  He further faults his counsel for failing to call an expert witness.  Dixon additionally claims his trial counsel was ineffective in allowing Laborie to testify to hearsay in violation of *Crawford v. Washington*.  He additionally claims his counsel was ineffective in failing to move to suppress his coerced confession.  Finally, he faults trial counsel for failing to challenge a juror who knew the trial judge.

#### 1.  State Court Rulings

Dixon asserted each of these arguments in his application for post-conviction relief.  The trial court found that Dixon failed to show that he received ineffective assistance of trial and denied relief on the claims as follows:

> The petition has a Sixth Amendment right to effective counsel.  Defense counsel's performance will be evaluated by reviewing courts under the familiar test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
>
> To be successful in arguing ineffective assistance of counsel , a petitioner must provide deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment.  A petitioner must also

---

[64] *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018); *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

provide actual prejudice to the point that the results of the trial cannot be trusted. Both prongs of the *Strickland* test must be established before relief will be granted.

There is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel does not mean errorless counsel and the reviewing court does not judge counsel's performance based on hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. *State v. Soler*, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

The Supreme Court has emphatically directed that, "in evaluating the performance of counsel, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonably precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91, 104 S.Ct. 2052, 80 L.Ed.2d 674.

In reviewing effective assistance of counsel on direct appeal, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the defendant. *Evits v. Lucey*, 469 U.S. 387, 394 (1985). The Court gives great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues. *Jones v. Barnes*, 463 U.S. 745 (1983). This is true even where the weaker arguments have merit. *Id.* at 751-2.

When the claim of ineffective assistance of appellate counsel is based on failure to raise the issue on appeal, the prejudice prong of the *Strickland* test requires the petitioner to establish that the appellate court would have granted relief, had the issue been raised. *United States v. Phillips*, 210 F.3d 345, 350 (5 Cir. 2000).

Mindful of controlling federal and state jurisprudence, the court now turns to Petitioner's claims of ineffective assistance made in the instant application and argued in the Petitioner's memorandum in support:

Claim #1 – Ineffective assistance of counsel – Illegal search and seizure

Petitioner first claims that counsel was ineffective in failing to contest the illegal search of his cellphone. As the State points out in their response, there is no constitutional protection of a search and seizure by a private citizen. In this case, a private citizen found the cellphone and notified/showed police. After police realized the content, a warrant was applied for and obtained. The court finds no merit to this claim.

Claim #2 – Ineffective assistance of counsel – Chain of custody with cell phone

Petitioner next claims that trial counsel was ineffective for failing to raise the chain of custody issue. He argues that Gretna Police Department broke the chain of custody, and that the individuals who were responsible for the chain of custody were not present to testify. He further argues that in this case, the evidence was not identified, was not in chain of custody, and thus should not have been admitted.

The court finds no merit to this claim. As the State points out, chain of custody issues go to the weight of the evidence and not admissibility once proper foundation has been laid. This, the court finds petitioner's claim to be speculative and conclusory, as he fails to present any deficiency in counsel's performance or any resulting prejudice.

<u>Claim #3 – Ineffective assistance of counsel – prosecutorial misconduct</u>

Petitioner next claims that trial counsel was ineffective for failure to raise the issue of prosecutorial misconduct and fabricated evidence, and failed to call an expert. However, the petitioner makes no showing that evidence or testimony was falsified. He provides no facts or evidence to rebut any specifics of the State's highly technical evidence presented. Petitioner's entire claim is purely based on speculation and is conclusory. Petitioner fails to prove any deficiency in counsel's performance or any resulting prejudice.

<u>Claim #4 – Ineffective assistance of counsel – Hearsay evidence, confrontation</u>

Petitioner next claims that trial counsel was ineffective for allowing testimony of witnesses not called at trial through police testimony at trial. Specifically, petitioner claims that Ryan Badeaux and Brad Case was not called at trial, but that everything he did for the police was presented at trial, and that this violated the Confrontation Clause. Petitioner maintains that counsel failed to interview Case or Badeaux, failed to ensure that they would be called at trial, and failed to object to hearsay evidence.

The court finds petitioner's argument to be speculative and finds no merit to this claim. The State avoided presenting hearsay evidence. As the state points out in its response, the officer testified to actions and not statements made by Badeaux. Furthermore, the overwhelming weight of the evidence against petitioner indicates the lack of prejudice. Petitioner fails to prove any deficiency in counsel's performance, and more importantly, fails to show any prejudice resulting.

<u>Claim #5 – Ineffective assistance of counsel – confession</u>

Petitioner next claims that counsel was ineffective in failing to address issues concerning the confession, Miranda requirements, and reasonable hypothesis of innocence.  Petitioner claims that his confession was coerced and was made under duress.  The court finds no merit to petitioner's claim.  The record reflects that trial counsel did in fact litigate the motion to suppress statement and was unsuccessful.  At the suppression hearing and at trial, trial counsel had petitioner's mother testify as to police officers' duress.

Petitioner presents no evidence in support of this claim.  Petitioner's accusations of coercion and duress are purely speculative and conclusory. Petitioner fails to present any evidence of counsel's deficient performance, or any resulting prejudice.

<u>Claim #6 – Ineffective assistance of counsel -voir dire transcript, out of time appeal</u>

Petitioner next claims that he was denied a copy of the voir dire transcripts and thus was denied a direct appeal.  He claims that he received ineffective assistance of counsel when a prospective juror who admitted to knowing the judge was placed on the jury without challenge for cause, where a juror who knew the Petitioner was quickly dismissed for cause.

The court finds no merit to this claim.  The judge was not a party to this case, and a juror knowing the judge is of no consequence.  Petitioner fails to raise any interchanges that might implicate constitutional errors in the proceedings. Petitioner fails to specify with any reasonable particularity the factual basis for any such relief, and fails to provide any particularize need.

Petitioner has already had two appeals and is not entitled to an out of time appeal at this time.  On the showing made, petitioner fails to provide any deficient performance by counsel, or any prejudice resulting.

Under LSA-C.Cr.P. art. 930.2, the petitioner in an application for post-conviction relief shall have the burden of proving that relief should be granted. Petitioner has not presented sufficient evidence in support of any of these claims, and thus has not met his burden.

Under LSA-C.Cr.P art 929, if the court determines that the factual and legal issues can be resolved based upon the application and answer, and supporting documents, the court may grant or deny relief without further proceedings.[65]

---

[65] ECF No. 10-1, at 851-53, Order, 4/25/22.

On review of that decision by the Louisiana Fifth Circuit Court of Appeal, it denied Dixon's related writ application, explaining:

> In his APCR and in this writ application, realtor first argues that his counsel rendered ineffective assistance by failing: (1) to challenge the warrantless search of his cell phone; (2) to challenge the chain of custody; (3) to call an expert to challenge the fabricated findings of the State's digital forensic examination of relator's cell phone; (4) to object to hearsay testimony; and (5) to challenge the voluntariness of relator's confession.

> Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. *State v. Casimer*, 12-678 (La. App 5 Cir. 3/13/13), 113 So.3d 1129, 1141. To prove ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Casimer*, 113 So.3d at 1141. Under the *Strickland* test, the defendant must show: (1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. *Id.* An error is considered prejudicial if it was so serious a to deprive the defendant of a fair trial, or "a trial whose result is reliable." *Id.* To prove prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. *Id.* (citing *Strickland v. Washington, supra)*.

> By way of background, the following facts are provided from this Court's opinion in *Dixon*, 254 So.3d at 833.

>> Defendant was often the caretaker of his two-year old sister, L.D., when his mother, C.D., worked. On January 26, 2013, while watching L.D., defendant invited Rayan Badeaux, a man he met on the Internet, to his house located at 1402 Hancock Street in Gretna, where defendant engaged in sexual intercourse with Mr. Badeaux. Afterwards, defendant left the room to check on L.D. While defendant was out of the room, Mr. Badeaux looked through defendant's cell phone and located a video of a young toddler and an adult male who was touching the toddler's vagina. Mr. Badeaux immediately left defendant's house with defendant's cell phone and went to the New Orleans Police Department's (NOPD) Fourth District Station in New Orleans. Because the aforesaid residence is located in the City of Gretna, the Gretna Police Department was contacted regarding the pornographic video on the cell phone.

> Detective Jeffrey Laborie with the Gretna Police Department met Mr. Badeaux at NOPD and obtained the cell phone from him. Mr. Badeaux showed Detective

Laborie one video of a small female toddler, approximately one or two years old, with a pacifier in her mouth. The video showed a female toddler who was unclothed, and an adult man's hand touching her vagina. Detective Laborie testified that he believed, based on experience, that there was additional contraband on the cell phone. (Footnotes omitted).

In relator's first claim of counsel's ineffectiveness, he asserts that Detective Laborie's viewing of the video on relator's cell phone with Mr. Badeaux amounted to an unlawful warrantless search, which went unchallenged by counsel.

The Fourth Amendment to the United States Constitution and Louisiana Constitutional Article I, § 5 protect individuals from unreasonable searches and seizures. However, a search or seizure by a private citizen, acting in his capacity as a private citizen, is not prohibited by the Fourth Amendment because the amendment only protects against actions by government agents. *See United States v. Jacobsen*, 466 U.S. 109, 113 S. Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *State v. Gentry*, 450 So.2d 773, 776 (La. App. 5 Cir. 1984), *writ granted*, 457 So.2d 1185 (La,. 1984). The Fourth Amendment "was not intended to protect against private trespasses." *Gentry*, 450 So.2d at 776. Once a private search reveals an item, the Fourth Amendment does not prohibit governmental use of the item as evidence. *Id.* at 776.

In *Gentry*, *supra*, courier service employees opened a package because it did not conform to shipping specifications. Upon doing so, the employees discovered a white powdery substance, which they presumed was cocaine and notified law enforcement. *Id.* at 77475. In reviewing the defendant's claim that the cocaine's removal from the package was an unlawful warrantless search, this Court found:

> One of the elements necessary to constitute an unreasonable search is the defendant's expectation of privacy. Once the private search has revealed the item, the defendant's expectation of privacy surrounding his package has greatly diminished, if not completely compromised. The employees of D.H.L. had already opened the cassette package and exposed the package of white powder, later found to be cocaine. The employees had already opened the cassette and exposed the package prior to contacting police officials. Once the private search had revealed a white powdery substance, believed to be cocaine the officers did not violate any legitimate expectation of privacy that would trigger a violation of the Fourth Amendment, *U.S. v. Jacobsen*, *supra*.

*Gentry*, 450 So.2d at 777.

Similarly, in the instant case, Mr. Badeaux, a private citizen, had already searched relator's cell phone and found the video before arriving at the police

station and showing the video to Detective Laborie.  This, the "search" of relator's cell phone conducted by Mr. Badeaux was not subject to the limitations of the Fourth Amendment because he was not a governmental agent.  Furthermore, law enforcement conducted no other search of the digital contents of relator's cell phone until a search warrant was obtained.  As such, relator's reliance on *Riley v. California*, 573 U.S. 373, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014), in which the Supreme Court held that police generally may not, without a warrant, search digital information on a cellphone seized from an individual who has been arrested, is misplaced.

The filing of pretrial motions is squarely within the ambit of trial strategy.  And counsel is not required to engage in futility.  *State v. Pendelton*, 96-367 (La. App. 5 Cir. 5/28/97), 696 So.2d 144, 156, writ denied, 97-1714 (La. 12/19/97), 706 So.2d 450.  Here, we find relator makes no showing that counsel was ineffective for failing to argue a motion to suppress the evidence on the grounds urged by relator.  *See State v. Williams*, 613 So.2d 252, 256-57 (La. 1992).

Next, relator faults counsel for not challenging the State's chain of custody, which relator claims was "broken" because the Outbound Evidence Transfer Receipt lacks a signature from Chris Brossette, an individual whose name appears on the form as having received the cell phone on February 21, 2013.  Realtor also maintains that the cell phone's SD memory card was not listed on the chain of custody form, even though evidence from the SD memory card was presented at trial.

As an initial matter, while Chris Brossette's signature does not appear on the outbound Evidence Transfer Receipt form, the chain of custody form included in relator's application shows Chris Brossette's signature on the form, dated February 21, 2013.  Additionally, the Outbound Evidence Transfer Receipt form lists both the cell phone and the SD memory card as evidence.

In any event, identification of evidence can be accomplished through a chain of custody, by tracing the object from the time it was seized to the time it was offered in evidence.  *State v. Cosey*, 97-2020 (La. 11/29/00), 779 So.2d 675, 678, cert denied, 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001); *State v. Arita*, 04-39 (La. App. 5 Cir. 3/1/05), 900 So.2d 37, 43, *writ denied*, 05-843 (La. 11/29/05), 916 So.2d 165.  The evidence as to custody need not eliminate all possibilities that an object has been altered.  It is sufficient if the evidence shows it is more likely than not that the object is one connected with the case.  Once a proper foundation has been laid with regard to a piece of evidence, a lack of positive identification or a defect in the chain of custody goes to the weight of the evidence, rather than its admissibility.  Ultimately, a chain of custody is a factual matter for determination by the jury.  *State v. Housley*, 05-502 (La. App. 5 Cir. 1/31/06), 922 So.2d 659, 665, *writ denied*, 06-1183 (La. 11/17/06), 942 So.2d 531.

18

At trial, Detective Laborie testified as to the chain of custody, first identifying the envelope containing the cell phone. The detective explained that he gave the cell phone to Detective Alvarez, who logged it in as evidence with the item and exhibit numbers, the date, and his initials. Testimony from the State's forensic expert further established that the SD memory card was located inside the cell phone. As such, it does not appear that any alleged deficiencies on the forms as urged by relator would have done much to diminish the testimony of the State's witnesses who established the cell phone's chain of custody. Therefore, we find that counsel did not commit an unprofessional error by not challenging the chain of custody on the grounds raised by relator.

Relator also faults counsel for failing to call an expert to prove that the digital forensic examination report relied on evidence fabricated by the State. In support of his claim, relator points to inconsistencies with the chain of custody form and the report concerning dates and the labeling of evidence. However, as discussed above, relator's attack on the chain of custody is without merit. Furthermore, relator's assertion that an expert would have countered the testimony of the State's expert in the field of computer and mobile device forensics is speculative and conclusory. *See* La. C.Cr.P. art. 930.2; *see also Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."). Instead, for all that appears, counsel made the strategic choice to cast doubt on the forensic report's findings by challenging the credibility of the field of digital forensics given the absence of a national standard. Because counsel objected to the qualification of the State's witness as an expert, calling a defense expert in that same field would appear to undercut counsel's trial strategy. An alleged error that is within the ambit of trial strategy does not establish ineffective assistance of counsel because "opinions may differ on the advisability of such a tactic." *State v. Wise*, 13-247 (La. App. 5 Cir. 11/9/13), 128 So.3d 1220, 1230, *writ denied*, 14-253 (La. 9/12/14), 147 So.3d 703).

Next, relator argues that Detective Laborie's testimony about his interaction with Mr. Badeaux constituted inadmissible hearsay, which was not objected to by counsel. However, "[t]he time and manner of making objections is part of the trial strategy decision-making of the trial attorney." *State v. Moore*, 16-644 (La. App. 5 Cir. 3/15/17), 215 So.3d 951, 968. In the instant case, on direct examination, Detective Laborie testified that Mr. Badeaux "showed one video that he had said that he saw." At this point, the prosecutor stated, "Without anything that he –" in an apparent attempt to prevent the detective from testifying about his conversation with Mr. Badeaux. The detective then stated, "He showed me a video." As such, it does not appear a hearsay objection was warranted given the detective's ambiguous response followed by the prosecutor's curtailment of the detective's testimony with regard to what Mr. Badeaux told him. Furthermore, a police officer's testimony may include information provided by another individual

19

without constituting hearsay if it is offered to explain the course of the investigation and the events leading to the defendant's arrest. *State v. Cho*, 02-274 (La. App. 5 Cir. 10/29/02), 831 So.2d 433, 447, *writ denied*, 02-2874 (La. 4/4/03), 840 So.2d 1213. Under these circumstances, relator fails to show that grounds for an objection existed. *See Williams*, 613 So.2d at 256-57.

As part of this claim, realtor also argues that counsel should have called Mr. Badeaux as a witness, along with Brad Case, whom relator named in his confession as the person who requested the photos and received them via text from relator. As a general matter, the decision to call or not to call a particular witness is a matter of trial strategy and nor, *per se*, evidence of ineffective assistance of counsel. *State v. Allen*, 06-778 (La. App. 5 Cir. 4/24/07), 955 So.2d 742, 751, *writ denied*, 08-2432 (La. 1/30/09), 999 So.2d 754. In this instance, relator's claims that these two men would willingly testify on relator's behalf with the risk of incriminating themselves is speculative at best. *See* La. C.Cr.P. art 930.2.

Finally, relator claims that counsel failed to challenge the voluntariness of his confession. Despite relator's claim to the contrary, counsel filed a motion to suppress relator's statement, which was denied following a hearing. In addition, counsel extensively cross-examined the detectives about the circumstances surrounding relator's statement and further challenged the reliability of the confession during closing argument because the police failed to record it. Under these circumstances, realtor's claim is hindsight dissatisfaction with an unsuccessful strategy rather than ineffective assistance. *See State v. Felde*, 422 So.2d 370, 393 (La. 1982), *cert. denied*, 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983).

Relator also maintains that he was denied the right to judicial review based upon a complete record because the *voir dire* examination from his trial was not included in the appellate record in this case. In relator's view, he is now entitled to an out-of-time appeal.

As an initial matter, requests for an out-of-time appeal generally arise when the defendant claims to have not been informed of his right to appeal or counsel failed to perfect a timely appeal. In *State v. Counterman*, 475 So.2d 336, 339 (La. 1985), the Louisiana Supreme Court held that an APCR filed in the trial court is the appropriate procedural vehicle for a defendant who has failed to appeal to seek reinstatement of his right to appeal. Such is not the case here as relator has already received two appeals. Furthermore, an incomplete record may nonetheless be adequate for appellate review. *State v. Hawkins*, 96-766 (La. 1/14/97), 688 So.2d 473, 480. A defendant is not entitled to relief in this situation absent a showing of prejudice based on the missing portions of the transcripts. *Id.* In *State v. Rodriguez*, 93-461 (La. App. 4 Cir. 1994), 635 So.2d 391, *writ denied*, 94-1161 (La. 8/23/96), 678 So.2d 33, *voir dire*, arguments, and jury charges, were not included in the transcript in the record on appeal. However, because the defendant could not show

any prejudice from the missing portions of the transcript, he was not entitled to relief based on the missing portions of the transcript.

According to relator, the *voir dire* transcript is necessary to show that counsel rendered ineffective assistance by failing to challenge a juror for cause who admitted to knowing the trial judge. However, an attorney's actions during *voir dire* are considered to be a matter of trial strategy. *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). Under La. C.Cr.P. art. 797, it does not appear that any grounds exist for challenging a prospective juror for cause based on a relationship with the trial judge. Instead, La. C.Cr.P. art. 797 provides in pertinent part that the state or the defendant may challenge a juror for cause on the ground that:

> (3) the relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]

Even assuming the prospective juror knew the trial judge in relator's case, this factor standing alone does not appear to show counsel was ineffective. See La. C.Cr.P. art. 930.2. Thus, we find that relator does not show prejudice from the *voir dire* transcript's absence from the record.

Alternatively, relator contends that he is entitled to a copy of the *voir dire* transcript. However, an incarcerated indigent must demonstrate a particularized need before receiving a copy of a court document free of charge. *State ex rel. Simmons v. State*, 93-275 (La. 12/16/94), 647 So.2d 1094, 1095 (*per curiam*). As discussed above, relator's conclusory allegation of counsel's ineffectiveness during *voir dire* does not meet that burden.[66]

The Louisiana Supreme Court held that Dixon failed to show that he received ineffective assistance of counsel under *Strickland*.[67]

## 2. **AEDPA Standards and *Strickland***

The issue of ineffective assistance of counsel is a mixed question of law and fact.[68] Thus, under the AEDPA, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

---

[66] ECF No. 10-1, at 2144-49, 5th Cir. Order, 22-KH-227, 6/20/22.

[67] *Dixon*, 352 So. 3d at 555; ECF No. 10-1, at 2693, La. Sup. Ct. Order, 2022-KH-01174, 1/11/23.

[68] *Strickland v. Washington*, 466 U.S. 668, 698 (1984); *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).

The United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.[69]  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[70]  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[71]

In deciding ineffective assistance of counsel claims, a court need not address both prongs of the conjunctive *Strickland* standard but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.[72]  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'"[73]

On habeas review, the United States Supreme Court has clarified that, under *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."[74]  "Even under de novo review, the standard for judging counsel's representation is a most deferential one."[75]  The courts must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."[76]

---

[69] 466 U.S. at 697.
[70] *Id.* at 687-88.
[71] *Id.* at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).
[72] *Kimler*, 167 F.3d at 893.
[73] *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (citation omitted) (quoting *Strickland*, 466 U.S. at 693); *Harrington*, 562 U.S. at 112 (*Strickland* requires a "substantial" likelihood of a different result, not just "conceivable" one.)
[74] *Harrington*, 562 U.S. at 105.
[75] *Id.*
[76] *Strickland*, 466 U.S. at 689.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.[77] "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence."[78] In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.[79] Tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance.[80]

### a.    Claim 1: Abandoning the Motion to Suppress the Cellphone

Dixon first claims that his trial counsel was ineffective in abandoning Dixon's motions to suppress the cellphone evidence based on illegal search and seizure. Dixon claims that Badeaux, acting as an agent of the police, stole his phone and that Officer Laborie viewed the videos on the cellphone without a warrant in violation of *Riley v. California*, 573 U.S. 373 (2014).

The State responds that the filing of pretrial motions falls within the realm of trial strategy. The State further argues that Dixon's trial counsel was not ineffective because a motion based on the grounds claimed by Dixon would have been futile.

The record reflects that defense counsel filed a motion to suppress evidence on July 9, 2014.[81] He claimed that the cell phone was unlawfully obtained in violation of *Riley v. California*.[82] In its July 22, 2014 response, the State claimed that the initial search of Dixon's

---

[77] *Id.* at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

[78] *Harrington*, 562 U.S. at 105.

[79] *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

[80] *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997); *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

[81] ECF No. 10-1, at 54, Motion to Suppress the Evidence, 7/9/14.

[82] *Id.*

phone was not made by law enforcement personnel and that the search of the cell phone by law enforcement was authorized by a validly obtained warrant.[83]  Defense counsel filed a second motion to suppress evidence and claimed that the evidence obtained from the cell phone SD card was obtained without a warrant.[84]  The only mention of a motion to suppress the cell phone evidence occurred at a hearing on September 10, 2015, at which time defense counsel stated, "There was a phone that was allegedly seized from the house but it was seized by a private entity, who I'm not even sure from.  So we can address that later on.  We don't need to deal with it at this motion hearing."[85]  There is no indication in the record that the motions were ever ruled on by the trial court or withdrawn by defense counsel.  However, Dixon claims that defense counsel told him at the pretrial hearing that he would not pursue the motions to suppress the cell phone evidence.[86]

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[87]  A person's private cell phone qualifies as an "effect" for Fourth Amendment purposes.[88]  In *Riley*, the Supreme Court held that "officers must generally secure a warrant before conducting ... a search [of data on a cell phone]."[89]  However, "[t]he Fourth Amendment proscribes only governmental action - it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government

---

[83] *Id.* at 58, State's Response to Motion to Suppress Evidence, 7/22/14.
[84] *Id.* at 101, Motion to Suppress Evidence, 10/12/16.
[85] *Id.* at 1680, Hearing Tr., 9/10/15.
[86] ECF No. 3-1, at 17.
[87] U.S. CONST. AMEND. IV.
[88] *See, e.g.*, *Riley*, 573 U.S. at 386.
[89] *Id.*

official."[90]  Thus, when a private party acts on its own accord and provides evidence against a defendant to the government, the police need not "avert their eyes."[91]

"Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information."[92]  While "the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative," it does "protect[ ] against such intrusions if the private party acted as an instrument or agent of the Government."[93]  In order to challenge the search by Badeaux, a private party, Dixon would have had to show: (1) the State knew or acquiesced in the intrusive conduct; and (2) the private party intended to assist law enforcement efforts or to further his own ends.[94] With respect to the first factor, there must be some evidence of government participation in or affirmative encouragement of the private search before the court will apply the Fourth Amendment to it.[95]  Dixon fails to meet either requirement.

There is no evidence that the police knew about or acquiesced in Badeaux's search of Dixon's cellphone.  The police had no prior knowledge of Badeaux or Dixon prior to Badeaux delivering the cell phone to the station and certainly did not encourage Badeaux to search and seize Dixon's phone.  Nor is there any evidence that Badeaux intended to assist law enforcement efforts by searching Dixon's phone.  Rather, the evidence establishes that Badeaux was looking through Dixon's phone when he found a pornographic video and took the phone to the police.  Badeaux

---

[90] *United States v. Runyan*, 275 F.3d 449, 457 (5th Cir. 2001) (quoting *United States v. Jacobsen*, 466 U.S. 190, 113 (1984)) (internal quotation marks omitted).
[91] *Coolidge v. New Hampshire*, 403 U.S. 443, 489 (1971).
[92] *United States v. Jacobsen*, 466 U.S. 109, 117 (1984).
[93] *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989).
[94] *United States v. Paige*, 136 F.3d 1012, 1018 (5th Cir. 1998).
[95] *United States v. Jarrett*, 338 F.3d 339, 345 (4th Cir. 2003); *see also United States v. Miller*, 688 F.2d 652, 657 (9th Cir. 1982); *United States v. Walther*, 652 F.2d 788, 791-92 (9th Cir. 1981).

told Laborie that he decided to go through Dixon's cell phone because he was merely curious.[96]

Sergeant Alvarez testified at the hearing relating to the motion to suppress Dixon's statement that

Badeaux, who had met Dixon on Craig's List and claimed to have a sexual relationship with him,

took Dixon's phone and brought it to the police after he saw a pornographic video on it.[97]  Alvarez

similarly testified at trial that Badeaux, after observing a pornographic video on Dixon's phone,

got dressed, took the phone, left Dixon's home, and brough it to the 4th District Station in New

Orleans.[98]

Laborie testified at trial that Badeaux turned the phone into the New Orleans Police

Department and that Badeaux showed him one video.[99]  Laborie testified that he had no idea what

interaction Badeaux may have had with Dixon before Laborie met with Badeaux.[100]

Thus, the evidence demonstrates that the search of Dixon's cellphone by Badeaux was a

search by a private citizen acting in a private capacity.  While Badeaux showed Laborie a single

video on the cell phone,[101] "[a] police view subsequent to a search conducted by private citizens

does not constitute a 'search' within the meaning of the Fourth Amendment so long as the view is

confined to the scope and product of the initial search."[102]  There is no indication in the record that

the police performed any search of Dixon's cell phone beyond the scope of Badeaux's private

search until after they secured the appropriate search warrants.  Rather, the evidence of record

establishes that Alvarez viewed the three videos on the cell phone after he secured a search.[103]

---

[96] ECF No. 10-1, at 772, GPD Crime Report, 1/26/13; *id.* at 777, Narrative, 3/14/13.

[97] *Id.* at 1681, 1684-85, Hearing Tr., 9/10/15.

[98] *Id.* at 1797, Trial Tr., 5/16/17.

[99] *Id.* at 1735-36, Trial Tr., 5/16/17.

[100] *Id.* at 1747.

[101] *See id.* at 1735-36, Trial Tr., 5/16/17; *id.* at 772, GPD Crime Report, 1/26/13; *id.* at 777, Narrative, 3/14/13.

[102] *United States v. Runyan*, 275 F.3d 449, 458 (5th Cir.2001), quoting *United States v. Bomengo*, 580 F.2d 173, 175 (5th Cir. 1978) (citing *United States v. Paige*, 136 F.3d 1012, 1019 (5th Cir.1998)).

[103] *See* ECF No. 10-1, at 778, Narrative, 3/14/13; *id.* at 595, Search Warrant, 1/26/13; *id.* at 596-97,

For all these reasons, a motion to suppress the search and seizure of the cell phone would not have been meritorious. Counsel's failure to pursue the motions cannot be considered to constitute ineffective assistance of counsel.[104]

The state courts' denial of relief was not contrary to or an unreasonable application of Strickland. Dixon is not entitled to relief as to this claim.

### b.    Claim 2: Chain of Custody for the Cell Phone

Dixon next claims his trial counsel was ineffective in failing to raise an issue regarding the chain of custody for the cell phone. He claims that the Gretna Police Department broke the chain of custody of the cell phone.

The State responds that the evidence of record rebuts Dixon's claim. It further argues that the chain of custody issue goes to the weight of the evidence rather than to its admissibility once the proper foundation was laid. The State concludes that Dixon's conclusory and speculative allegations fail to demonstrate either deficient performance or prejudice.

The identification of evidence for its admission pursuant to LA CODE EVID. art. 901 can be made through testimony at trial that the piece of evidence is the one related to the case or by establishing the custody of the evidence from the time it was seized until the time of trial.[105] "Evidence as to custody does not have to eliminate all possibility that the object has been altered;

---

Application for and Sworn Proof of Probable Cause for the Issuance of a Search Warrant Herein, 1/26/13; *id.* at 598, Return of Search Warrant, 1/26/13; *id.* at 1756-58, Trial Tr., 5/16/17.

[104] *See Zuppo v. Carroll*, 458 F. Supp. 2d 216, 226 (D. Del. 2006) ("[B]ecause there was no basis for filing a motion to suppress the property supplied [to police] by [a third party], counsel did not provide ineffective assistance."); *accord United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions.").

[105] *State v. Priest*, 265 So. 3d 993, 1001 (La. 2/6/19) (citations omitted).

rather, for admission, it suffices that it is more probable than not that the object is the one connected to the case."[106]

Dixon initially claims that the cell phone evidence was relinquished by Alexis Rivera to Chris Brosette on February 21, 2013, but that Brosette never signed the receipt to verify his identity.[107]  However, a Chain of Custody form for the cell phone in fact includes Brosette's signature confirming that he received the evidence.[108]  Further, the cell phone was identified by Detective Laborie at trial prior to its admission.[109]  Laborie explained that the envelope which contained the cell phone was taped and initialed.[110]  He further explained that he gave the cell phone to Alvarez who logged it.[111]  Sergeant Alvarez, during his testimony, visually identified the cell phone as the one seized.[112]  A Digital Analysis Report indicates that the Gretna Police Department provided the phone to a laboratory evidence technician on March 16, 2016, for further analysis and that it was examined by Villere until May 13, 2016.[113]

While Dixon is correct that the SD card is not specifically included on the Chain of Custody form, the SD card is included on the Outbound Evidence Transfer Receipt signed by Rivera.[114]  Further, Detective Villere testified at trial that the SD card was in the cell phone when he received it for analysis.[115]

---

[106] *Id.* at 1001 (citations omitted).
[107] ECF No. 3-1, at 22.
[108] ECF No 10-1, at 634, Chain of Custody.
[109] *Id.* at 1737-38, Trial Tr., 5/16/17.
[110] *Id.* at 1737.
[111] *Id.*
[112] *Id.* at 1756-57.
[113] *Id.* at 797, Digital Analysis Report, 5/9/17.
[114] *Id.* at 633, Outbound Evidence Transfer Receipt, 2/21/13.
[115] *Id.* at 1812, 1815, Trial Tr., 5/16/17.

Thus, the record supports a finding that it was more probable than not that the evidence was connected to Dixon's case. It is well-settled that counsel cannot be ineffective for failing to raise meritless objections.[116] Moreover, as conceded by Dixon,[117] a defect in the chain of custody does not preclude the admissibility of the evidence, but rather goes to the weight of the evidence.[118] For these reasons, Dixon has not shown that his trial counsel was ineffective in failing to object to chain of custody or any resulting prejudice.

The denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*. Dixon is not entitled to relief on this issue.

### c.     Claim 3: Prosecutorial Misconduct & Failure to Call an Expert

Dixon next claims that his trial counsel was ineffective in failing to object to prosecutorial misconduct. He claims that the State knowingly relied on falsified evidence relative to whether the child pornography was found on an SD card file or a Camera file. He claims the State intentionally used false testimony or allowed false testimony to go uncorrected in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). He also claims that his trial counsel was ineffective in failing to call an expert witness to rebut the expert witness testimony from the State. He claims that a defense expert was necessary in order to show that the data utilized by the State's expert witness was manipulated or fabricated.

The State responds that Dixon fails to make any showing that the evidence or testimony was falsified, much less any showing that the State had any knowledge of false testimony or

---

[116] *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998); *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007) ("Turner's counsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless.").

[117] *See* ECF No. 3-1, at 22.

[118] *State v. Holliday*, 340 So. 3d 648, 673 (La. 1/29/20) (citing *State v. Sam*, 412 So. 2d 1082, 1086 (La. 4/6/82)), *cert denied*, *Holliday v. Louisiana*, 141 S. Ct. 1271 (2021).

evidence.  It further responds that Dixon's claim regarding an expert witness is conclusory and speculative.

**(i)**       **Prosecutorial Misconduct**

Due process may be violated if a prosecutor knowingly presents false testimony at trial or allows untrue testimony to go uncorrected.[119]  In order to demonstrate prosecutorial misconduct based on the presentation of false testimony, the petitioner must show that (1) the testimony was actually false, (2) the State knew it was false, and (3) the testimony was material.[120]  False testimony is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict.[121]

Dixon claims that Detective Villere, the State's expert witness, falsified evidence in order to substantiate the case and committed perjury at trial.  In support of this claim, Dixon argues that Laborie, in his police narrative, stated that he observed a file on the cell phone entitled "SD Card," but that Villere testified that the evidence was found in a file entitled "Camera."  He claims that "[b]y the file name being changed from 'SD Card' file to 'Camera' file, the jury would be led to believe that the evidence was created on the cell phone, without a reasonable doubt."[122]  He further claims that items in Villere's report are not included in the digital forensic examination sections of his report and that the report has dates and times that do not match.

---

[119] *Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).
[120] *Duncan v. Cockrell*, 70 F. App'x 741, 744 (5th Cir. 2003); *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993).
[121] *Duncan*, 70 F. App'x  at 744 (citing *Nobles*, 127 F.3d at 415).
[122] ECF No. 3-1, at 23-24.

According to the narrative written by Laborie and included in the police report, Badeaux told him that he located a number of pornographic video files of Dixon's little sister in a file on Dixon's cell phone entitled "SD Card."[123] This evidence was not presented at trial.

At trial, Detective Villere, an expert in computer forensics and mobile device forensics, testified that he examined Dixon's cell phone and SD card.[124] He explained that the SD card was located inside the phone when it was submitted to be analyzed.[125] Villere extracted forensic data from the SD card and included his findings in a digital analysis report.[126] Villere explained that to preserve the evidence on the device, he put the phone in a Faraday box, which blocks all signals and prevents the cell phone from connecting to a cell phone tower.[127] Villere explained that he put the SD card through an ultra block which prevents changes being made to the SD card.[128] He testified that the image verification results show that information found on the SD card was not altered or changed.[129] Villere examined the SD card a second time and the results were an "exact copy."[130] Villere explained that he also examined Dixon's laptop computer and located similar graphics on both the laptop hard drive and the SD card.[131]

When asked about a particular image, Villere explained that, from the data, he was able to determine the make and model of the device that captured the image, a Samsung SPH-M820, as well as the date and time the image was captured.[132] Villere opined that the cell phone actually

---

[123] ECF No. 10-1, at 772, GPD Crime Report, 1/26/13.
[124] *Id.* at 1811, 1818, Trial Tr., 5/16/17.
[125] *Id.* at 1812, 1815.
[126] *Id.* at 1812-13, 17.
[127] *Id.* at 1816.
[128] *Id.* at 1814.
[129] *Id.* at 1816.
[130] *Id.* at 1818, 1821-22.
[131] *Id.* at 1818, 1821.
[132] *Id.* at 1829.

captured the photos that were located on the laptop.[133]   Villere testified that one image was

recovered from the SD card.[134]  He explained that three video files were located in more than one

location on the SD card and that the data indicated that the same phone captured each of the

videos.[135]   Those videos were also located on the laptop.[136]   At no point did Villere testify

regarding the particular folder in which the videos and images were found.  Rather, he testified

that most of the  images, while captured by the cell phone, were only located on the laptop.[137]  He

testified that one image and three videos were recovered from the SD card.[138]   He, however,

explained that the SD card had multiple folders, and that the videos had been "moved around,"

and therefore were recovered in multiple locations.[139]

Villere's March 4, 2013, report indicates that three active videos and six recovered videos,

which appeared to be copies of the original three videos, were recovered from the SD card.[140]  He

opined that "[t]he location and information related to the recovered videos is consistent with the

videos being copied/moved to a new location and then deleted from the original location."[141]  Two

recovered graphics were also located.[142]  The Digital Forensics Examination indicates that pictures

and videos located on the SD card were found in folders entitled "Camera" and "thumbnails."[143]

Dixon has not shown that any evidence was tampered with or otherwise falsified or that

Villere testified falsely.  Nor does he demonstrate that the State directed or procured false evidence

---

[133] *Id.* at 1831-36.

[134] *Id.* at 1836.

[135] *Id.* at 1837-40, 1844, 1846.

[136] *Id.* at 1837-40.

[137] *Id.* at 1835-36, 1840.

[138] *Id.* at 1836-40, 1844.

[139] *Id.* at 1846-47.

[140] *Id.* at 796, Digital Analysis Report, 3/4/13.

[141] *Id.*

[142] *Id.*

[143] *Id.* at 533-44, Digital Forensics Examination, 5/12/16.

or testimony.  While Dixon has repeatedly claimed that he was set up and that someone put the videos on his cell phone, this claim is simply not supported by the evidence.[144]  Notably, while Dixon sat crying in a holding cell, Laborie heard him say the following: (1) "I'm so stupid;" (2) "I can't believe I did that, I was just trying to make this boy happy;" (3) "I'm so lazy, I should have deleted those files;" (4) "I lost my family;" and (5) "I'm never going to be able to make up for this."[145]  During his recorded statement, Dixon actually confessed to taking three videos of his sister with her vagina exposed.[146]  He described the three videos in detail, and admitted that one video showed him playing with her vagina, one video showed him ejaculating, and that the third video was dark and could not be observed.[147]  Dixon admitted that he had sent the videos to someone named Brad.[148]  He also told Sergeant Alvarez that he had taken approximately ten pictures of his sister with her vagina exposed, and that one picture depicted him inserting a Q-tip in her vagina.[149]  The recording of Dixon's statement was introduced into evidence and played for the jury.[150]  Alvarez testified that he had no knowledge of the photographs until Dixon gave his statement.[151]  Thus, Dixon's statements together with Alvarez's testimony further corroborate the forensic evidence that Dixon's cell phone captured the pornographic videos and photographs.[152]

As there is no evidence that either the evidence or Villere's testimony was falsified nor any evidence that the prosecution knew that any evidence or testimony was false, any objection by

---

[144] Dixon provides no explanation for how the videos and photographs ended up on his laptop.
[145] ECF No. 10-1, at 773, GPD Crime Report, 1/26/13; *id.* at 1744, Trial Tr., 5/16/17.
[146] *Id.* at 778, Narrative, 3/14/13.
[147] *Id.*
[148] *Id.*
[149] *Id.*
[150] *Id.* at 1764-75, Trial Tr., 5/16/17.
[151] *Id.* at 1765-66, 1791.
[152] *Id.* at 1765-66, 1791.

counsel to prosecutorial misconduct would not have been successful; thus, Dixon fails to demonstrate his counsel was ineffective.[153]  He is not entitled to relief as to this claim.

### (ii)    Call an Expert

With regard to Dixon's related claim of ineffective assistance of counsel in failing to secure an expert, the law is well settled that an indigent defendant does not have an automatic right to expert assistance, even upon demand.[154]  Rather, he must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial."[155]  The requirement that the petitioner establish prejudice based on his counsel's failure to call a witness by naming the witness, setting forth the proposed testimony, demonstrating that the witness was available and would have testified, and showing the testimony would have been favorable to his defense applies to both lay and expert witnesses.[156]  The Fifth Circuit has "clarified that the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'"[157]  Instead, the Fifth Circuit requires the showing "as part of the burden of proving that trial counsel could have found and presented a favorable expert."[158]

In this case, Dixon merely claims that the evidence extracted from his cell phone and laptop computer was fabricated and that an expert would have confirmed his allegations.  He, however,

---

[153] *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

[154] *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993).

[155] *Id.*; *Griffith v. Quarterman*, 196 F. App'x 237, 243 (5th Cir. 2006); *see also Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993) (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2052).

[156] *Woodfox*, 609 F.3d at 808 (citing *Day*, F.3d 566 at 538).

[157] *Hooks v. Thaler*, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting *Woodfox*, 609 F.3d at 808).

[158] *Id.* at 83 (citation omitted).

has presented no evidence demonstrating that an expert was available and would have testified in a manner beneficial to the defense.[159]   Indeed, Dixon has not even identified an expert witness who was available and willing to testify.   Nor has he set forth the content or substance of the unidentified expert witness' proposed testimony.   As a result, this court cannot find counsel ineffective for failing to present the testimony of a purely theoretical expert.[160]

Dixon's arguments on this point are wholly speculative.   Indeed, he has identified no actual evidence to contradict the trial evidence or the highly technical testimony of the State's expert, Detective Villere, who opined that the pornographic photographs and videos were taken on Dixon's cellphone between July and September 2012, and saved to his laptop computer.   While defense counsel did not present testimony of a defense expert, defense counsel attempted to raise doubt as to the veracity of Villere's testimony.   He objected to Villere's designation as an expert due to the lack of a national standard for the digital forensics industry.[161]   On cross-examination, defense counsel attempted to cast doubt on Villere's ability to determine through digital forensics that the photographs and videos were taken on Dixon's phone rather than one of the thousands or millions of other Samsung phones in the world.[162]   He also attempted to cast doubt as to how Villere was able to retrieve photographs and videos that had been removed from the SD card or deleted.[163]   During closing argument, defense counsel again attacked Villere's credibility and expertise and the related forensic evidence.[164]   "[A] decision to attack the state's expert witnesses

---

[159] *See Scott v. Louisiana*, 934 F.2d 631, 633 (5th Cir. 1991).

[160] *Anthony v. Cain*, No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue.").

[161] ECF No. 10-1, at 1805, Trial Tr., 5/15/17.

[162] *Id.* at 1841-42.

[163] *Id.* at 1844-45.

[164] *Id.* at 1896-1901, Trial Tr., 5/16/17.

on cross-examination rather than calling additional experts can be a part of a reasonable trial strategy."[165]

Dixon has presented no proof beyond his own speculation that an expert witness was needed or could have offered any specific support to his defense. The fact that his defense was not successful and he was convicted does not mean that counsel's actions were deficient.[166] "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."[167]

The state courts reasonably concluded that Dixon is not entitled to relief under *Strickland*. Dixon is not entitled to relief as to these claims.

### d.    Claim 4: Object to Hearsay Testimony and Call Lay Witnesses

Dixon next claims that his trial counsel was ineffective in failing to object when Officer Laborie provided hearsay testimony in violation of *Crawford v. Washington*. In support of this claim, Dixon points to an isolated comment by Laborie that Badeaux showed him a video on Dixon's cell phone. Dixon also appears to contend that his counsel should have objected to related statements made by the State during closing arguments. He further faults trial counsel for failing to interview and subpoena Brad Case as a witness and for failing to interview Badeaux and require the State to call Badeaux as a witness at trial. Dixon also includes a singular sentence that his appellate counsel was ineffective for failing to raise on appeal violation of the right to confrontation.[168]

---

[165] *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007).
[166] *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").
[167] *Strickland*, 466 U.S. at 689.
[168] ECF No. 3-1, at 31.

The State responds that Laborie's testimony that Badeaux showed him a video on Dixon's phone that he said he saw was admissible under the Louisiana police explanation doctrine. Alternatively, the State contends, that given the weight of the evidence, Dixon fails to show prejudice resulting from his attorney's failure to object to the testimony. The State argues that the prosecution did not make any improper remarks during closing arguments and that, further, the jury was instructed that opening statements and closing arguments are not evidence. It further argues that Dixon fails to show that either proposed witness would have provided favorable testimony. Finally, the State argues that appellate counsel was not ineffective for failing to raise issues that were not preserved for review.

### (i)  Confrontation Clause

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Confrontation Clause therefore prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."[169]  *Crawford* indicated that testimonial statements include "ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially."[170]

The Confrontation Clause does not, however, prohibit the admissibility of nontestimonial statements.[171]  Instead, it applies only to "'witnesses' against the accused . . . those who 'bear

---

[169] *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[170] *Id.* at 51 (internal quotation and citation omitted); *see generally Bullcoming v. New Mexico*, 564 U.S. 647, 658 (2011) (recognizing the *Crawford* standard as the controlling doctrine of the Court).

[171] *Davis v. Washington*, 547 U.S. 813, 821 (2006); *United States v. George*, Cr. No. 17-201, 2019 WL 4194526, at *4-6 (E.D. La. Sep. 9, 2019) (nontestimonial statement did not run afoul of *Bruton*).

testimony[,]'"[172] and only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause."[173]  "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."[174]

While the Supreme Court did not specifically define testimonial or nontestimonial, it did make clear that the Confrontation Clause was concerned with "testimony."  Testimony "is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact," and the Court noted that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."[175]  "[W]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."[176]  A statement is testimonial when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[177]  "Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers."[178]

At trial Detective Laborie testified that he met with Badeaux on January 26, 2013.[179] Laborie explained that Badeaux gave him a cellphone and "showed one video that he said he had

---

[172] *Crawford*, 541 U.S. at 51.
[173] *Davis*, 547 U.S. at 821.
[174] *Id.*
[175] *Crawford*, 541 U.S. at 51.
[176] *Id.* at 68.
[177] *Davis*, 547 U.S. at 822.
[178] *Ohio v. Clark,* 576 U.S. 237, 249 (2015).
[179] CMF 10-1, at 1735-36, Trial Tr., 5/16/17.

saw."[180]   When the prosecution attempted to prevent Laborie from testifying regarding what Badeaux told him, Laborie testified, "He showed me a video."[181]

"Under the Louisiana Rules of Evidence, an investigating officer may be permitted to refer to statements made to him by other persons involved in the case without it constituting hearsay if it explains his own actions during the course of an investigation and the steps leading to the defendant's arrest."[182]  Similarly, under federal law, testifying officers may refer to an out-of-court statement to "provide context for their investigation or explain 'background' facts," so long as the "out-of-court statements are not offered for the truth of the matter asserted therein, but instead for another purpose: to explain the officer's actions."[183]   Here, Laborie's testimony that Badeaux showed him a video that he said he had seen on the cell phone was not offered for the truth of the matter asserted and simply explained how Laborie got involved in the investigation.  Further, even if Laborie's testimony that Badeaux showed him a video that he said he had seen constituted hearsay, Dixon has not shown prejudice as a result of his counsel's failure to object given that the statement was isolated, and the evidence of Dixon's guilt, as explained later in this report and recommendation, was overwhelming.

Dixon also complains that his counsel failed to object to certain statements made by the prosecution during its rebuttal closing argument.[184]  Specifically, Dixon claims the following statements violated his right to confrontation:

---

[180] *Id.* at 1736.

[181] *Id.*  Dixon does not fault his counsel for eliciting hearsay testimony from Alvarez on cross-examination regarding what Badeaux told him during the interview.  *Id.* at 1782-83.  On re-direct, the trial court overruled the defense's objection to the prosecution asking Alvarez what Badeaux told him, presumably because the defense had opened the door to the testimony.  *Id.* at 1796.

[182] *Woodfox v. Cain*, 609 F.3d 774, 814 (5th Cir. 2010).

[183] *United States v. Kizzee*, 877 F.3d 650, 659 (5th Cir. 2017).

[184] ECF 3-1, at 30-31.

(1) Mr. Bosworth throughout the course of this trial wants to just beat it over your head Brad Case, Brad Case, Brad Case, Ryan Badeaux, Ryan Badeaux, Ryan Badeaux….;

(2) But what did the hard, physical evidence prove.  What did the direct testimony in this evidence prove?  It proved that Detective Alvarez was telling the truth when he told you that the only thing he knew at the time was that Ryan Badeaux saw what he saw on that phone and that was a video;

(3)  That is another reason why Ryan Badeaux doesn't matter.  Thank you Mr. Badeaux for giving us this phone so that we can get to this man.[185]

Initially, none of the foregoing statements by the prosecution were improper.   The prosecution merely responded to arguments made by the defense that suggested that Badeaux had put the pornography on the phone and that Dixon, contrary to his confession, could not have sent the pornography to Case because Case was in jail at the time.[186]   Further, the jury was instructed that the opening statements and closing arguments by the attorneys are not evidence and should not be considered as such.[187]   Courts have repeatedly held that jurors are presumed to follow their instructions, and there is no reason to believe that the jurors in this case disregarded the instructions.[188]

For all these reasons, Dixon has failed to show that his trial counsel was ineffective in failing to lodge objections to hearsay or any resulting prejudice.  The state courts' denial of relief was not contrary to or an unreasonable application of *Strickland*.  Dixon is not entitled to relief as to these claims.

---

[185] *Id.* (citing Trial Tr. at 177, 179).
[186] ECF No. 10-1, at 1892-96, Trial Tr., 5/16/17.
[187] *Id.* at 1556-57, Jury Charges, 5/16/17.
[188] *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

### (ii)     Investigate & Call Witnesses

Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[189]  However, the defense of a criminal case does not "contemplate the employment of wholly unlimited time and resources."[190]  An attorney is not necessarily ineffective for failing to investigate every conceivable, potentially nonfrivolous matter or defense.[191]  Instead, a petitioner who asserts a claim of a failure to investigate by counsel, "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"[192]  To prevail on such a claim, the petitioner must provide factual support, not mere speculation, to establish what exculpatory evidence would have been discovered or revealed through further investigation by his counsel.[193]  Even if the attorney failed to conduct a reasonable investigation, the petitioner is still required to show prejudice resulting from that failure.[194]

Dixon presents no objective evidence at all to establish that his counsel failed to conduct a proper investigation.  Here, the record shows that counsel actively engaged in discovery and that discovery was provided to the defense.[195]  Counsel's questioning of the witnesses at trial shows that he was prepared and informed.

---

[189] *Strickland*, 466 U.S. at 691; *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).

[190] *Smith v. Collins*, 977 F.2d 951, 960 (5th Cir. 1992).

[191] *Id.*

[192] *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted); *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011); *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.") (citing *Strickland*, 466 U.S. at 696).

[193] *Id.* at 948; *Cox v. Stephens*, 602 F. App'x 141, 146 (5th Cir. 2015) ("[b]are allegations" that counsel failed "to make an adequate investigation of potential witnesses" were insufficient to warrant relief).

[194] *Lockhart*, 782 F.2d at 1282.

[195] ECF No. 10-1, at 22-24, Defendant's Request for Discovery & Bill of Particulars, 4/16/13; *id.* at 52, Minute Entry, 6/16/14; *id.* at 60, Minute Entry, 7/24/14.

Dixon faults his counsel for failing to investigate Badeaux and Brad Case.  However, Dixon offers no evidence that his trial counsel did not in fact investigate Badeaux and Case.  Bare speculation does not suffice to meet a petitioner's burden of proof.[196]  Without evidence proving that counsel failed to investigate Badeaux and Case, Dixon has not established that counsel's investigation was deficient.

Further, the evidence shows that defense counsel in fact investigated Case.  At trial, he introduced evidence that Case was detained on August 10, 2012, as well as a certified copy of his April 15, 2013, conviction for distribution of child pornography.[197]  He also introduced evidence that Badeaux had taken Dixon's phone.[198]  Thus, the jury was well aware the Badeaux, who Dixon had met on Craig's List, had stolen Dixon's phone and that Case had been convicted of distribution of child pornography.

Dixon claims that his counsel was ineffective in failing to subpoena Case to testify at trial.  "'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"[199]  To prevail, the petitioner must name the witness, demonstrate that the witness was available to testify and would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.[200]

---

[196] See Massey v. Cain, No. 14-2952, 2016 WL 5376239, at *10 (E.D. La. June 21, 2016), R&R adopted, 2016 WL 5362992 (E.D. La. Sept. 26, 2016); see also Ross v. Estelle, 694 F. 2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions of a critical use in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

[197] ECF No. 10-1, at 1788-91, Trial Tr., 5/16/17.

[198] Id. at 1783, 1852, 1854, 1864, 1872.

[199] Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)); Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008).

[200] Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citing Bray, 265 F. App'x at 298).

Dixon fails to provide any evidence, such as an affidavit from Case, demonstrating that he was available and would have testified in a manner beneficial to the defense. Therefore, Case failed to meet his burden of proof with respect to this claim.[201]

Finally, Dixon does not fault his counsel for failing to subpoena Badeaux as a witness. Rather, he faults his counsel for failing to require the State to call Badeaux as a witness.[202] Dixon, however, fails to point to any basis to support the argument that the defense can dictate which witnesses the State must call in its case. To the extent that Dixon claims that his counsel was ineffective in failing to call Badeaux, he has failed to show that Badeaux was available and would have provided testimony beneficial to the defense.

Dixon has failed to show that his trial counsel was ineffective in failing to investigate and call witnesses or any resulting prejudice. The state courts' denial of relief was not contrary to or an unreasonable application of *Strickland*. Dixon is not entitled to relief as to these claims.

### (iii) Ineffective Assistance of Appellate Counsel

Dixon faults his appellate counsel for failing to raise on appeal the alleged violation of his right to confrontation.

Criminal defendants are entitled to effective assistance of counsel in their first appeal of

---

[201] *See, e.g.*, *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); *Buniff v. Cain*, No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); *Anthony v. Cain*, No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); *Combs v. United States*, Nos. 08-0032 and 03-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); *Harris v. Director, TDCJ-CID*, No. 06-490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").
[202] *See* ECF No. 11, at 6.

right.[203]   The *Strickland* standard for judging performance of counsel also applies to claims of ineffective appellate counsel.[204]   To prevail on a claim that appellate counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.[205]

Effective appellate counsel is not required to assert every nonfrivolous available ground for appeal.[206]   On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue every nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal.[207]   Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail.[208]   Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be found constitutionally ineffective for failure to assert every conceivable issue.[209]

Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if

---

[203] *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).

[204] *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1997).

[205] *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001); *Smith*, 528 U.S. at 285-86.

[206] *Green*, 160 F.3d at 1043 (citing *Evitts*, 469 U.S. at 394, 105 S. Ct. 830).

[207] *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

[208] *See Anderson v. Quarterman*, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal . . . lack merit.   As such, failure to raise these issues did not prejudice Anderson."); *Penson v. Ohio*, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *Kossie v. Thaler*, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised).

[209] *Smith*, 528 U.S. at 288; *Jones*, 463 U.S. at 754.

44

possible, or at most on a few key issues."[210]  Far from evidencing ineffectiveness, an appellant

counsel's restraint often benefits the client because "a brief that raises every colorable issue runs

the risk of burying good arguments . . . in a verbal mound made up of strong and weak

contentions."[211]  As a result, the test to be applied in assessing such a claim is whether the issue

ignored by appellate counsel was "clearly stronger" than the issues actually presented on appeal.[212]

Initially, trial counsel did not object to Laborie's testimony that Badeaux told him he saw

a video on Dixon's cell phone.  It has been established that a petitioner forfeits his claim of a

Confrontation Clause violation if he fails to object to the inadmissible hearsay testimony on

confrontation grounds.[213]  As a result, appellate counsel was not in a position to raise the claim on

appeal.  Appellate counsel cannot be considered ineffective "in declining to raise an unreviewable

issue."[214]

The record reflects that when the prosecution asked Alvarez on re-direct, "Ryan Badeaux,

you were asked a little bit about what Ryan told you about his interaction with Roy on January the

26th of 2013.  What did Ryan tell you?," defense counsel objected.[215]  That objection was

---

[210] *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

[211] *Id.* at 753.

[212] *See, e.g.*, *Diaz*, 228 F. App'x at 427; *accord Smith*, 528 U.S. at 288.

[213] *See Moya v. Sullivan*, No. 07-01598, 2010 WL 1023940, *8 (C.D. Cal. Jan. 22, 2010) (failure to object in the trial court on confrontation grounds prevents State from attempting to overcome objection by producing absent declarant), *R&R. adopted*, 2010 WL 1023943 (C.D. Cal. Mar. 16, 2010).

[214] *Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001); *accord Weatherspoon v. Cockrell*, No. 10-4500, 2011 WL 4351397, at *34 (E.D. La. July 8, 2011) ("[A]ppellate counsel was precluded from raising this claim because there had been no contemporaneous objection at trial.  Therefore, appellate counsel was not deficient for failing to raise the issue on appeal, and petitioner suffered no prejudice.  Accordingly, petitioner's instant claim fails because he cannot show a reasonable probability that he would have prevailed on appeal if the issue had been raised." (citations omitted)), *R.&R. adopted*, 2011 WL 4063611 (E.D. La. Sept. 13, 2011); *Arceneaux v. Cain*, No. 06-3964, 2009 WL 917429, at *10 (E.D. La. Mar. 31, 2009) ("Where appellate review of a claim would be barred due to the absence of a contemporaneous objection, appellate counsel is not ineffective for failing to assert the claim."); *Taylor v. Holliday*, No. 06-4118, 2008 WL 5146505, at *8 (E.D. La. Dec. 4, 2008) (petitioner failed to demonstrate ineffective assistance of appellate counsel when issue was not preserved for appeal).

[215] ECF No. 10-1, at 1796, Trial Tr., 5/16/17.

overruled after an off-the-record discussion was held.[216]  Thereafter, Alvarez testified that Badeaux

met Dixon at his house, had sexual relations, and when Dixon left the room to use the restroom,

Badeaux heard Dixon's phone and began to look through it.[217]  Badeaux told Alvarez that he saw

a video of a man playing with a young toddler's vagina.[218]  He took the phone and brought it to

the 4th District Station in New Orleans.[219]  Badeaux told Alvarez that he met Dixon on Craig's

List and believed his name was Allen Dixon.[220]  When Alvarez showed Badeaux a picture of Allen

Dixon, Badeaux did not identify him as the person whom he had met.[221]  Badeaux showed Alvarez

the Craig's List advertisement, which had a picture of the man he had met, and which had the name

"Roy" underneath it.[222]  Alvarez placed a picture of Roy Dixon in a lineup, and Badeaux identified

him.[223]

      While defense counsel objected to Alvarez's testimony on re-direct, it is unclear from the

record whether a Confrontation Clause argument was explicitly made.  Assuming that defense

counsel had preserved a confrontation claim issue with respect to Alvarez's testimony, Dixon has

not shown that appellate counsel was ineffective for failing to raise the issue on appeal.  On cross-

examination of Alvarez, defense counsel elicited hearsay testimony from him relating to

Badeaux.[224]  Specifically, he asked Alvarez, "And you met with Mr. Badeaux, and he basically

told you, and you have learned through this, that he met Mr. Dixon on Craig's List?," to which

---

[216] *Id.*
[217] *Id.* at 1796-97.
[218] *Id.* 1797.
[219] *Id.*
[220] *Id.*
[221] *Id.* at 1797-98.
[222] *Id.* at 1798.
[223] *Id.*
[224] *Id.* at 1783.

Alvarez responded in the affirmative.[225]  Defense counsel also asked, "Mr. Dixon stepped out of the room, decided to look through his phone, saw something that he thought was bad, and stole the phone," to which Alvarez responded in the affirmative.[226]  The defense waived any confrontation issue related to Alvarez's testimony on re-direct when it "opened the door" by eliciting hearsay testimony on cross examination.[227]

Dixon has not met his burden to show that any claim relating to the Confrontation Clause was "clearly stronger" than the issues actually presented on appeal by counsel or that there is a reasonable probability that the appellate court would have vacated or reversed the trial court judgment if only the proposed claims had been asserted.  Therefore, he is not entitled to relief on this ineffective assistance of appellate counsel claim.

### e. Claim 5: Motion to Suppress Statement and Reasonable Hypothesis of Innocence

Dixon next contends that his counsel was ineffective in failing to move to suppress his confession.  He further claims that his counsel failed to argue a reasonable hypothesis of innocence.  He appears to claim that his counsel should have argued that he was set up by Badeaux, that the State failed to prove that Dixon took the pictures and videos and further failed to prove that the child in the pictures and videos was his sister, and that there was no evidence that his specific phone was used to take the videos.  He also appears to attack the sufficiency of the evidence, although he does not enumerate that argument as a separate claim.

---

[225] *Id.*

[226] *Id.*

[227] *See United States v. Acosta*, 475 F. 3d 677, 684-85 (5th Cir. 2007) (rejecting Confrontation clause claim where the defense opened the door on cross-examination)*; United States v. Quinones-Chavez*, 641 F. App'x 722, 725 (9th Cir. 2016) (rejecting Confrontation Clause claim challenging testimony referring to witnesses who did not testify at trial because the testimony "emerged only after defense counsel opened the door by eliciting testimony concerning these witnesses").

The State responds that defense counsel litigated a motion to suppress Dixon's statement, and at trial called into question the veracity of Dixon's confession. It further argues that defense counsel presented a defense, including testimony from Dixon's mother, in an attempt to cast doubt on the police investigation and presented a vigorous closing argument as to why the jury should discount Dixon's confession. The State argues that any claim of insufficient evidence is procedurally barred pursuant to LA. CODE CRIM. PROC. art. 930.4(C) as it was not raised on appeal and, regardless, is meritless.

### (i)    Dixon's Statement

Dixon attacks the voluntariness of his statement and his counsel's failure to raise an issue regarding the allegedly coerced confession. He claims that he signed the *Miranda* form with the understanding his entire interview would be recorded, but the recording did not start until after the police threatened him.

Notably, Dixon does not acknowledge that defense counsel actually moved to suppress Dixon's statement.[228] The trial court held a hearing on September 10, 2015.[229] Alvarez testified at the hearing that Dixon executed a Rights of Arrestee form indicating that he understood his *Miranda* rights and waived them.[230] Alvarez testified that Dixon was not forced, threatened, or coerced in any manner.[231] Dixon's statement was video recorded.[232] Alvarez, however, admitted that his pre-interview with Dixon was not recorded.[233] According to Alvarez, Dixon admitted that he took three videos and approximately ten photographs of his sister when she was one year old.[234]

---

[228] *See* ECF No. 10-1, at 22, Motion to Suppress the Statement(s), 4/16/13.
[229] *Id.* at 78, Minute Entry, 9/10/15; *id.* at 1678-1708, Hearing Tr., 9/10/15.
[230] *Id.* at 1681-82, Hearing Tr., 9/10/15.
[231] *Id.* at 1682.
[232] *Id.* at 1683, 1686-87.
[233] *Id.* at 1687.
[234] *Id.* at 1683.

He also admitted that he had touched her genitals.[235]  Dixon also told Alvarez that he took pictures involving him sticking a Q-tip in his sister's vagina.[236]  Alvarez denied that Badeaux told him that he called Dixon's family and demanded money before he went to the police.[237]  Alvarez denied threatening to take away his sister L.D. if he failed to confess.[238]  He also denied telling C.D. that he would take away her daughter if Dixon failed to confess.[239]  Alvarez denied that Dixon originally told him that Brad had sent him the videos.[240]

Dixon's mother, C.D., testified at the hearing that her mother told her that she had received a call from a man asking for money, and when she told him that she did not have any, he said he was going to turn Dixon's phone into the police.[241]  She claimed that the police told her that someone had turned in a cell phone with inappropriate pictures.[242]  C.D. testified that Alvarez returned to her home later and told her that her son was cooperating and had confessed to everything.[243]  She claimed that, on another occasion, Alvarez told her that if she did not cooperate with the investigation he would kick in her door at 3 a.m. and take L.D. away.[244]  She claimed that she had viewed the videos on Dixon's phone and that the victim depicted was not her daughter.[245]  She also claimed that her son told her that Alvarez threatened to take away L.D. and arrest C.D. if he failed to cooperate and confess.[246]

---

[235] *Id.*
[236] *Id.* at 1693.
[237] *Id.* at 1685.
[238] *Id.* at 1687.
[239] *Id.*
[240] *Id.* at 1689.
[241] *Id.* at 1694, 1700.
[242] *Id.* at 1696.
[243] *Id.*
[244] *Id.* at 1696-97.
[245] *Id.* at 1697-1704.
[246] *Id.* at 1704-05.

At the conclusion of the hearing, the trial court denied the motion to suppress.[247]   That defense counsel did not succeed in suppressing Dixon's statement does not render his assistance ineffective.[248]

At trial, defense counsel repeatedly attacked the veracity of Dixon's statement.   During opening statement, defense counsel told the jury that the police had failed to record the pre-interview of Dixon, and that C.D. would testify that Dixon told her that he said that he did something he did not do because the police threatened to take away his sister if he did not confess.[249]   He claimed that Dixon had been coached on what to say prior to his statement.[250]  Defense counsel claimed that there were "real problems with this case," and that the State would not meet its burden of proof beyond a reasonable doubt.[251]

Defense counsel attacked the credibility of Dixon's confession during his cross-examination of Alvarez.   He questioned Alvarez regarding the number of hours Dixon was sitting in the holding tank before he gave his statement.[252]   Alvarez admitted that he had no knowledge

---

[247] *Id.* at 1706.   At no time has Dixon raised a claim that the trial court erred in denying the motion to suppress his statement.   To the extent he complains that the pre-interview was unrecorded, due process does not require that a custodial interrogation be recorded.   *State v. Robertson*, 712 So. 2d 8, 29 (La. 3/4/98) ("defendant argues his due process rights were violated by Det. Dietrich's talking to him while the tape recorder was turned off. We are not aware of any due process requirement that a statement given to the police be recorded.   Nor is there any support in the record for defendant's claim that the fact a portion of his statement was unrecorded somehow violated his due process rights or coerced him into giving a confession.").   Further, Dixon's claim that he signed the waiver of *Miranda* rights form with the understanding that the entire interview would be recorded is not support by the record.   The evidence demonstrates that Sergeant Alvarez met with Dixon at 1834 on January 26, 2013, at which time he read and explained to Dixon his rights.   ECF 10-1, at 829, Rights of an Arrestee or Suspect, 1/26/13; *id.* at 808, GPD Crime Report Narrative, 1/26/13.   Dixon signed the form and agreed to provide a recorded statement, which commenced at 1836.  *Id.* at 808.

[248] *Reddit v. Cain*, No. 06-1851, 2009 WL 2616035, at *11 (E.D. La. Aug. 25, 2009.

[249] ECF No. 10-1, at 1723, Trial Tr., 5/15/17.

[250] *Id.* at 1724.

[251] *Id.* at 1725-26.

[252] *Id.* at 1784-85, Trial Tr., 5/16/17.

of whether someone coached Dixon while he was sitting in the holding tank.[253]  He admitted that he had an unrecorded pre-interview with Dixon.[254]  Defense counsel also attempted to raise doubt about Dixon's claim that he had made the videos for Brad, a person with whom he was texting, by presenting evidence that Brad Case was in jail commencing on August 10, 2012.[255]

In a further effort to raise doubt about the voluntariness and veracity of Dixon's confession, defense counsel presented the testimony of C.D. who testified that her son "said he did it because they threatened to bash his head in."[256]  She claimed that there were threats against her, L.D., and her son.[257]  C.D. further testified that the child depicted in the pornographic pictures and videos was not her daughter.[258]

Finally, during closing statement, defense counsel vigorously attacked the State's case.[259] He argued that the case was "riddled with issues that should leave [the jury] concerned about the veracity of the truth of the allegations."[260]  He attacked the truthfulness of Dixon's confession.[261] He suggested that Badeaux, who had stolen he phone, put the videos on it.[262]  Defense counsel also argued that the child depicted in the pornography was not Dixon's sister.[263]

In summary, defense counsel vigorously attacked the State's witnesses and evidence.  He attacked the voluntariness and truthfulness of Dixon's confession at all stages of the trial.  He presented testimony that L.D. was not the child depicted in the photographs and videos.  He argued

---

[253] *Id.* at 1786.

[254] *Id.*

[255] *Id.* at 1787-91.

[256] *Id.* at 1856.

[257] *Id.* at 1856, 1858, 1866.

[258] *Id.* at 1861-62, 1869-70.

[259] *Id.* at 1891-1902.

[260] *Id.* at 1892.

[261] *Id.* at 1893-96, 1900-01.

[262] *Id.* at 1892-93, 1889-90.

[263] *Id.* at 1901.

that the evidence had been planted by Badeaux.  The fact that trial counsel was not successful does not render counsel ineffective.[264]

The state courts' denial of relief was not contrary to or an unreasonable application of *Strickland*.  Dixon is not entitled to relief as to this ineffective assistance of counsel claim.

### (ii)   Sufficiency of the Evidence

While not enumerated as a specific claim, Dixon appears to challenge the sufficiency of the evidence.  As noted, the State responds that the claim is procedurally barred and without merit.

Dixon did not raise a sufficiency of the evidence claim on direct appeal.  He did not specifically enumerate insufficient evidence as a claim in his application for post-conviction relief; although, like he does here, he attacked the State's evidence and claimed it did not support a finding of guilty beyond a reasonable doubt.[265]  The state court opinions do not include an analysis of the sufficiency of the evidence, although the trial court noted "the overwhelming weight of the evidence against petitioner" in addressing another claim.[266]  The procedural bar asserted by the State, however, is based on Dixon's alleged failure to exhaust.  The Court need not resolve the issue of whether Dixon's claim is unexhausted.  Pursuant to 28 U.S.C. § 2254(b)(2), this Court has authority to deny on the merits even potentially unexhausted claims raised in a federal habeas petition.[267]

A claim of insufficient evidence presents a mixed question of law and fact.[268]  A federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the

---

[264] *See Martinez,* 99 F. App'x at 543.

[265] *See* ECF No. 10-1, at 435-437, Memorandum in Support of Application for Post Conviction Relief with Request for Appointment of Counsel and an Evidentiary Hearing, 9/24/21 (signed 9/20/21).

[266] *Id.* at 2193, Order, 4/25/22.

[267] When reviewing an unexhausted claim on the merits, the AEDPA's deferential standard of review does not apply.  Instead, the federal courts review unexhausted claims under a de novo standard.  *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

[268] *Perez*, 529 F.3d at 594; *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).

evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.[269]  As the Supreme Court explained:

> [T]his inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[270]

To determine whether commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.[271]  The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.[272]  A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.[273]  Thus, review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses because those determinations are the exclusive province of the jury.[274]  All credibility choices and conflicting inferences must be resolved in favor of the verdict.[275]  Again, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but

---

[269] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).

[270] *Jackson*, 442 U.S. at 319 (emphasis in original) (internal quotation marks and citations omitted).

[271] *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U. S. at 324 n.16).

[272] *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial.") (quoting *Jackson*, 443 U.S. at 324).

[273] *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)

[274] *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

[275] *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

rather whether it made a rational decision to convict or acquit.'"[276]  Further, although Dixon claims no direct evidence supports his convictions, the fact that most of the evidence was circumstantial does not change the standard of review.[277]

Louisiana's circumstantial evidence standard, which requires every reasonable hypothesis of innocence be excluded, does not apply in federal habeas corpus proceedings; in these proceedings, only the *Jackson* standard need be satisfied, even if state law would impose a more demanding standard of proof.[278]

Dixon was charged with, and convicted of, production of pornography involving a juvenile under thirteen years of age and sexual battery of a juvenile under the age of thirteen.  LA. REV. STAT. § 14:81.1(A)(1) provides that "[i]t shall be unlawful for a person to produce, promote, advertise, distribute, possess, or possess with the intent to distribute pornography involving juveniles."  At the time of Dixon's conviction, Louisiana defined sexual battery as the "intentional touching of the anus or genitals of the victim by the offender using any instrumentality or part of the body of the offender, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim" when "[t]he offender acts without the consent of the victim."[279]

---

[276] *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993)).

[277] *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1305 (5th Cir. 1991).

[278] *Foy v. Donnelly*, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); *Higgins v. Cain*, Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), *aff'd*, 434 F. App'x 405 (5th Cir. 2011); *Williams v. Cain*, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), *aff'd*, 408 F. App'x 817 (5th Cir. 2011); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); *Wade v. Cain*, No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), *aff'd*, 372 F. App'x 549 (5th Cir. Apr. 9, 2010); *see also Coleman*, 566 U.S. at 655 ("Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

[279] *See* LA. REV. STAT. § 14:81.1(A)(1)

Sexual battery and pornography involving juveniles are general intent crimes.[280]  Under Louisiana law, general criminal intent is present "when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act."[281]  General intent may be inferred from the circumstance of the event and proved by direct or circumstantial evidence.[282]  Determination of whether the requisite intent is present in a criminal case is exclusively for the trier of fact.[283]

In this case, the jury heard testimony from Detective Laborie that, when he confronted Dixon, he was crying and said he wanted to tell his side of the story.[284]  Laborie brought Dixon back to the police station and placed him in a holding cell.[285]  Laborie, who sat in the office next to the holding cell, monitored Dixon via an audio/video camera.[286]  Laborie heard Dixon, who was crying, say, "I'm so stupid.  I can't believe I did that.  I'm so lazy.  I should have deleted those files.  I lost my family.  I will never be able to make up for this."[287]  Laborie typed Dixon's statements into his report as he heard them.[288]  Laborie further testified that C.D. told him that she had confronted Dixon about the videos on his phone and that he was no longer welcome in her home.[289]

---

[280] *State v. Cinel*, 646 So. 2d 309, 316 (La. 11/30/94) (noting that pornography involving juveniles requires general intent), *cert denied*, 516 U.S. 881, 116 S. Ct. 215, 133 L. Ed. 2d 146 (1995); *State v. Steveson*, 908 So. 2d 48, 52 (La. App. 5th Cir. 6/28/05) (noting that sexual battery requires same).

[281] LA. REV. STAT. § 14:10(2).

[282] *State v. Brokenberry*, 942 So. 2d 1209, 1213 (La. App. 2d Cir. 11/3/06); *State v. Culp*, 17 So. 3d 429, 434 (La. App. 2d Cir. 7/15/09).

[283] *State v. Huizar*, 414 So. 2d 741, 751 (La. 5/17/82).

[284] ECF No. 10-1, at 1741, Trial Tr., 5/16/17.

[285] *Id.* at 1742-43, 1749.

[286] *Id.* at 1743-44, 1751.

[287] *Id.* at 1744.

[288] *Id.* at 1744-45.

[289] *Id.* at 1752.

Sergeant Alvarez testified that Badeaux told him that he had viewed a video of a male playing with a young toddler's vagina on the phone of Allen Dixon whom he met on Craig's List.[290]  Badeaux took the phone and brought it to the police station.[291]  Alvarez showed Badeaux a photograph of Allen Dixon and Badeaux did not identify him.[292]  Ultimately, Badeaux identified Roy Dixon as the person he had met.[293]  After Alvarez obtained a search warrant for the phone, he viewed threes videos on the cell phone.[294]  One video depicted a toddler with her vagina exposed and a black penis ejaculating on her.[295]  A second depicted a black male's hand playing with the toddler's vagina.[296]  The third video was too dark to make anything out.[297]  Alvarez did not look at any photographs on the cell phone.[298]

After waiving his *Miranda* rights, Dixon gave a video recorded statement.[299]  Dixon's video recorded statement was played for the jury.[300]  Dixon told Alvarez that he made the videos in August 2012.[301]  Dixon stated that he had been texting Brad in August 2012 and had sent him videos and photographs in September 2012.[302]  Alvarez explained that he had no knowledge of the existence of photographs or a photograph with a Q-tip until Dixon gave his statement.[303]

---

[290] *Id.* at 1796-98.
[291] *Id.* at 1797.
[292] *Id.* at 1798.
[293] *Id.*
[294] *Id.* at 1756-58.
[295] *Id.* at 1758.
[296] *Id.*
[297] *Id.*
[298] *Id.* at 1758, 1791.
[299] *Id.* at 1759-64.
[300] *Id.* at 1765
[301] *Id.* at 1787.
[302] *Id.* at 1788,-90.
[303] *Id.* at 1765-66, 1791

After his statement, Dixon was placed under arrest, and Alvarez went to Dixon's home and met with Dixon's mother and toddler sister.[304]   Alvarez secured a second search warrant for a "forensic dump" of the cell phone.[305]   The subscriber information for the telephone, which was secured through a third warrant, indicated that Roy Dixon was the subscriber.[306]   Alvarez searched Dixon's residence, pursuant to a warrant, and seized a laptop computer located in Roy Dixon's room.[307]   Alvarez secured a search warrant to extract the contents of the laptop.[308]

Detective Villere, an expert in the field of computer and mobile device forensics, provided highly technical testimony regarding the extraction of digital information and data from Dixon's cell phone and laptop computer.   Villere examined Dixon's cell phone and authored a related digital analysis report.[309]   Child pornographic images and videos were located on the SD Card.[310]   Villere examined Dixon's laptop, and performed a second examination of the cell phone SD Card in order to compare the information located on each.[311]   Villere testified that similar graphics were located on both the SD Card and the hard drive of the laptop.[312]   He was able to determine from the data that a Samsung SPH-M820 cell phone captured various images, taken in July and August 2012, found on the laptop.[313]   One image was found on the SD Card as well as the laptop.[314]   Three

---

[304] *Id.* at 1767.
[305] *Id.* at 1768.
[306] *Id.* at 1769-71.
[307] *Id.* at 1772-76.
[308] *Id.* at 1778-79.
[309] *Id.* at 1811-14.
[310] *Id.* at 1817.
[311] *Id.* at 1817-19.
[312] *Id.* at 1821.
[313] *Id.* at 1827-36, 1841.
[314] *Id.* at 1836.

videos, captured by the cell phone in July 2012, were located on both the SD Card and the laptop.[315] Villere opined that all of the photographs and videos located were captured by Dixon's phone.[316]

      The defense presented the testimony of C.D., Dixon's mother, who claimed that her mother told her that she had received a phone call from a man asking for money in exchange for her son's cell phone.[317] She claimed that the only discussion she had with Dixon related to him inviting a man from Craig's List to the house and the fact that his phone was taken.[318] She claimed that Dixon later told her that he confessed because the police threatened to bash in his head.[319] C.D. testified that Alvarez threatened her.[320] She explained that she took L.D. for an examination and that the doctor told her that there was no evidence of trauma, which she believed meant that the child had not been sexually assaulted.[321] She claimed that L.D. was not the toddler depicted in the photographs and videos.[322] She admitted that she did not tell the police that someone had requested money from her mother in exchange for the phone.[323] She denied telling Laborie that her mother told her that someone else answered Dixon's phone.[324]

      In its rebuttal case, the State presented the testimony of Dr. Wetsman, a child abuse pediatrician, who examined, L.D., Dixon's sister.[325] Dr. Wetsman testified that there was no evidence of physical trauma and that he relayed the information to the child's mother.[326] Dr.

---

[315] *Id.* at 1837-40.
[316] *Id.* at 1840-42.
[317] *Id.* at 1852.
[318] *Id.* at 1854, 1872.
[319] *Id.* at 1856.
[320] *Id.* at 1858.
[321] *Id.* at 1859-60, 1866-68.
[322] *Id.* at 1861-62, 1869-70.
[323] *Id.* at 1870, 1873.
[324] *Id.* at 1871.
[325] *Id.* at 1875.
[326] *Id.* at 1876, 1880.

Wetsman explained that she hardly ever sees any injury in similar types of cases and the fact that there was no physical evidence did not mean the sexual assault did not occur.[327]  Dr. Wetsman admitted that she had no way of knowing whether L.D. had been sexually assaulted.[328]

Laborie testified on rebuttal that C.D. told him that her mother received a phone call from someone who had taken Dixon's phone and was bringing it to the police station because there were some videos on it.[329]  C.D. did not mention anything about money.[330]  According to Laborie, C.D. told him that she had confronted Dixon about the videos on his phone.[331]

To the extent that Dixon disagrees with the evidence, his arguments go to the weight and credibility of the evidence.  Challenges to the accuracy of witness testimony go to credibility, which is a matter left to the judgment of the trier of fact, and a reviewing court cannot reevaluate that credibility determination.[332]  A federal habeas court generally will not grant relief on an insufficient evidence claim premised on credibility issues.[333]

To the extent that Dixon references the *corpus delicti* rule and claims that "a conviction must rest upon firmer ground than the uncorroborated admission of confession of the accused,"[334]

---

[327] *Id.* at 1880-81

[328] *Id.* at 1881.

[329] *Id.* at 1884-85.

[330] *Id.* at 1885.

[331] *Id.*

[332] *State v. Thomas*, 13 So. 3d 603, 607 (La. App. 5th Cir. 4/28/09); *see also Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (noting that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions); *Holderfield v. Jones*, 903 F. Supp. 1011, 1018 (E.D. La. 1985) (habeas courts should defer to the jury's credibility determinations and justifiable inferences of fact.) (citing *United States v. Hatch*, 926 F.2d 387, 399 (5th Cir. 1991)).

[333] *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, No. 93-5340, 24 F.3d 240, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); *Phillips v. Cain*, No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), *R.&R. adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012); *Picou v. Cain*, No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

[334] *See* ECF 3-1, at 35-36 (citations omitted).

Louisiana's "*corpus delicti*" doctrine, which requires evidence to corroborate a confession in order to prove a crime occurred, is a state law doctrine that is not constitutionally mandated.[335]  Instead, "in challenges to state conviction under 28 U.S.C. § 2254, only *Jackson* need be satisfied, even if state law would impose a more demanding standard of proof."[336]  *Jackson* remains the appropriate standard of review for this federal habeas court.  In any event, Dixon was not convicted on the basis of his statements alone  Evidence independent of his statements establish his guilt beyond a reasonable doubt.  Specifically, the child pornography found on both Dixon's cell phone and laptop that corroborated his confession.

In summary, viewing the evidence in the light most favorable to the prosecution in accordance with *Jackson*, the State presented sufficient evidence for a reasonable trier of fact to conclude that each element of production of pornography involving a juvenile under the age of thirteen years of age and sexual battery of a juvenile under the age of thirteen was satisfied.  Dixon is not entitled to relief as to this claim.

### f.    Challenge a Juror on Voir Dire

Dixon also claims that his trial counsel was ineffective for failing to challenge for cause or by peremptory challenge a juror who admitted that he knew the judge.

The State responds that Louisiana law does not provide grounds for challenging a prospective juror because he or she knows the trial judge.  It concludes that defense counsel was not ineffective in failing to raise a meritless objection.

LA. CODE CRIM. PROC. art 797(3) allows the State or defendant to challenge a juror for cause when there is a relationship "by blood, marriage, employment, friendship, or enmity between

---

[335] *Lemons v. Cain*, 339 F. App'x 494, 497 (5th Cir. 2009) (citing *West v. Johnson*, 92 F.3d 1385, 1393 (5th Cir. 1996)).

[336] *West*, 92 F.3d at 1394 (quoting *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)) (brackets omitted).

the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict." Significantly, "article 797(3) does not include judges in the category of persons that, by virtue of their relationship to a potential juror, entitle a party to challenge that juror for cause because it would be reasonable to conclude that the relationship would influence the juror in arriving at a verdict."[337] Because trial judges do not have a stake in the outcome of a case, when a party has not shown that a relationship between the judge and a juror could influence the juror in coming to a verdict, friends and first cousins of the trial judge have been allowed to serve on a jury.[338]

Dixon has not identified the juror who allegedly knew the trial judge. He further has failed to provide any basis for any court to find that the juror was biased simply because the juror knew the trial judge or was otherwise unqualified to sit on the jury. Without some basis to have objected to or move to strike the juror, counsel did not act deficiently or prejudicially in allowing him to remain on the jury. Counsel is not ineffective for failing to assert a meritless objection or challenge a qualified juror.[339]

Further, an attorney's decision whether to request removal of a juror is generally a matter of trial strategy.[340] Counsel's decision in this regard is entitled to a strong presumption of reasonableness.[341] Given that there was nothing to indicate that the juror was biased simply since

---

[337] *State v. Mattire*, No. 2011 KA 2390, 2012 WL 4335432, at * 13 (La. App. 1st Cir. Sept. 21, 2012), *writ denied*, 117 So. 3d 506 (La. 2013).
[338] *Id.* at *11-13.
[339] *Johnson v. Cockrell*, 306 F.3d at 255; *Smith*, 907 F.2d at 585 n.6; *Koch*, 907 F.2d at 527.
[340] *See Ray v. Johnson*, 196 F.3d 1257 (5th Cir. 1999); *Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989); *Wash v. Hood*, Civ. Action 07CV46, 2007 WL 3047149, at *5 (N.D. Miss. Oct. 17, 2007) (citing *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995)).
[341] *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (recognizing a strong presumption that strategic or tactical decisions made after adequate investigation fall within the wide range of objectively reasonable professional assistance).

the juror knew the trial judge, Dixon has not shown that his counsel was constitutionally ineffective in failing to move to strike the juror nor has he shown any resulting prejudice.

The state courts' decision rejecting his claims of ineffective assistance of trial counsel was neither contrary to nor an unreasonable application of *Strickland*. Dixon is not entitled to relief as to this claim.

### B.    Claim 6 (in part): Denial of a Meaningful Appeal

Dixon contends that he was denied a meaningful appeal based on an incomplete appellate record. He claims that the voir dire transcript was omitted from the appellate record.

The State responds that Dixon's claim is baseless. It further asserts that Dixon fails to establish how the alleged missing transcripts would have had any impact on the ultimate outcome of his appeal.

In the last reasoned opinion on direct appeal, the Louisiana Fifth Circuit Court of Appeal found:

> Relator also maintains that he was denied the right to judicial review based upon a complete record because the *voir dire* examination from his trial was not included in the appellate record in this case. In relator's view, he is now entitled to an out-of-time appeal.
>
> As an initial matter, requests for an out-of-time appeal generally arise when the defendant claims to have not been informed of his right to appeal or counsel failed to perfect a timely appeal. In *State v. Counterman*, 475 So.2d 336, 339 (La. 1985), the Louisiana Supreme Court held that an APCR filed in the trial court is the appropriate procedural vehicle for a defendant who has failed to appeal to seek reinstatement of his right to appeal. Such is not the case here as relator has already received two appeal. Furthermore, an incomplete record may nonetheless be adequate for appellate review. *State v. Hawkins*, 96-766 (La. 1/14/97), 688 So.2d 473, 480. A defendant is not entitled to relief in this situation absent a showing of prejudice based on the missing portions of the transcripts. *Id.* In *State v. Rodriguez*, 93-461 (La. App;. 4 Cir. 1994), 635 So.2d 391, writ denied, 94-1161 (La. 8/23/96), 678 So.2d 33, *voir dire*, arguments, and jury charges, were not included in the transcript in the record on appeal. However, because the defendant could not show any prejudice from the missing portions of the transcript, he was not entitled to relief based on the missing portions of the transcript.

According to relator, the *voir dire* transcript is necessary to show that counsel rendered ineffective assistance by failing to challenge a juror for cause who admitted to knowing the trial judge. However, an attorney's actions during *voir dire* are considered to be a matter of trial strategy. *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). Under La. C.Cr.P. art. 797, it does not appear that any grounds exist for challenging a prospective juror for cause based on a relationship with the trial judge. Instead, La. C.Cr.P. art. 797 provides in pertinent part that the state or the defendant may challenge a juror for cause on the ground that:

> (3) the relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]

Even assuming the prospective juror knew the trial judge in relator's case, this factor standing alone does not appear to show counsel was ineffective. See La. C.Cr.P. art. 930.2. Thus, we find that relator does not show prejudice from the *voir dire* transcript's absence from the record.

Alternatively, relator contends that he is entitled to a copy of the *voir dire* transcript. However, an incarcerated indigent must demonstrate a particularized need before receiving a copy of a court document free of charge. *State ex rel. Simmons v. State*, 93-275 (La. 12/16/64), 647 So.2d 1094, 1095 (*per curiam*). As discussed above, relator's conclusory allegation of counsel's ineffectiveness during *voir dire* does not meet that burden.[342]

It is true that a criminal defendant has the right to adequate appellate and other review of his conviction based upon a sufficiently complete record.[343] However, the Supreme Court has not held that due process requires a verbatim transcript of the entire proceedings or that an incomplete record confers automatic entitlement to relief. The Fourteenth Amendment Due Process and Equal Protection Clauses only require states to provide indigent defendants with a trial transcript free of charge when it is necessary for meaningful appellate review.[344] Notably, the states are not required to furnish complete transcripts "so that the defendants . . . may conduct 'fishing expeditions' to

---

[342] ECF No. 10-1, at 2148-49, 5th Cir. Order, 22-KH-227, 6/20/22.

[343] *Mayer v. City of Chicago*, 404 U.S. 189, 198 (1971).

[344] *See Griffin v. Illinois*, 351 U.S. 12, 19-20 (1956).

seek out possible errors at trial."[345]   To prevail on a claim that the record was inadequate, a petitioner must prove that he was actually prejudiced in his appeal because a transcript or portion thereof was missing.[346]

Dixon has made no showing of prejudice in this case.   On the contrary, the record was wholly adequate for resolution of the claims that were actually asserted on both his first and second direct appeals (*i.e.*, ineffective assistance of counsel at the competency hearing, whether the sentences imposed were constitutionally excessive, and whether the trial court erred in denying his motion for reconsideration of sentence).   Where, as here, the missing voir dire transcript was immaterial to the claims actually asserted on both his first and second appeals, the record was adequate for full appellate review, and there was no denial of a meaningful appeal.[347]

Dixon has shown no basis to transcribe voir dire for purposes of appeal.   It is well-settled that Louisiana law deems claims of ineffective assistance of trial counsel more properly asserted in an application for post-conviction relief in the district court rather than on direct appeal.[348]   Thus, Dixon has not shown that any missing voir dire transcript was a substantial and significant portion of the record which prohibited appellate counsel from adequate review of the record for purposes

---

[345] *Jackson v. Estelle*, 672 F.2d 505, 506 (5th Cir. 1982).

[346] *Green*, 160 F.3d at 1045 ("[B]arring a showing that the [failure to record bench conferences during trial] resulted in 'actual prejudice,' habeas relief is unwarranted.") (citation omitted)); *see also Mullen v. Blackburn*, 808 F.2d 1143, 1146 (5th Cir. 1987) (finding petitioner failed to show the absence of voir dire transcript prejudiced his appeal); *Bozeman v. Cain*, No. 09-8423, 2010 WL 2977393, at *4 (E.D. La. June 7, 2010), *R&R. adopted*, 2010 WL 2977402 (E.D. La. July 20, 2010) (finding that petitioner's claim failed when there was no actual prejudice resulting from the failure to transcribe a bench conference).

[347] *See Schwander v. Blackburn*, 750 F.2d 494, 497-98 (5th Cir. 1985) (explaining that petitioner was not denied a meaningful appeal where the omitted portions of the trial transcript were immaterial to the error alleged on direct appeal); *Thomas v. Cain*, No. 12-2818, 2013 WL 5960808, at *5 (E.D. La. Nov. 6, 2013) (finding that the record was adequate for resolution of appellate claims).

[348] *State v. Watson*, 817 So. 2d 81, 84 (La. 2/14/02); *State v. Truitt*, 500 So. 2d 355, 359 (La. 1/12/87); *see State v. Smothers*, 836 So. 2d 559, 567 (La. App. 5th Cir. 12/30/02) (refusing to consider ineffective assistance of counsel claim on direct appeal); *State v. Hall*, 843 So. 2d 488, 495 (La. App. 4th Cir. 3/19/03) (same); *State v. Griffin*, 839 So. 2d 1148 (La. App. 3d Cir. 3/5/03) (same).

of asserting claims on appeal since the state appellate court likely would have deferred a claim of ineffective assistance of counsel during voir dire to post-conviction review, which Dixon later pursued.

Therefore, Dixon has not shown that the state courts' denial of relief on this claim was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. He is not entitled to relief on this claim.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Roy Dixon's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[349]

New Orleans, Louisiana, this _____19th_____ day of September, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[349] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).